# ROBERT LEVIN vs. JAMES HEWES.

*Constitutional law*: *right of trial before the forum provided by law. People's Court of Baltimore City*: *Ch. 823 of the Acts of 1912 construed. Construction of statutes; errors and mistakes; titles; enacting clause; conflicts between——. Justices of the peace*: *removal of trials; mandamus to compel——; location of offices; in Baltimore City; justices at large; different salaries and fees; appointment; by Mayor and City Council; in corporate capacity, by ordinance. Appointments by Governor*: *vacancies; under laws to take effect during Session of the Legislature. Constables*: *appointment.*

Chapter 823 of the Acts of 1912 provided a tribunal under the name of a "People's Court," to which all cases brought before a justice of the peace for Baltimore City might be removed by application in writing; a defendant in such a suit made application for a removal and was refused; he applied to the Superior Court of Baltimore City for the writ of mandamus to compel the removal, the writ was refused on the ground that the petitioner could, by appeal from the magistrate to the Baltimore City Court, there have the right and equity of his case determined. On appeal, *held* that the act provided a forum to which either party was entitled to a removal as matter of right and which could not be denied merely because there was another tribunal to which he might appeal; and that the writ should have been granted. 　　pp. 631, 645

It is not enough that a tribunal can be found in which a litigant can have his case fairly heard and determined. He is entitled to have it so heard and determined in the forum provided by law. 　　　　　　　　p. 630

Legislative enactments are not to be defeated because of mistakes, errors or omissions, provided the intent can be col-

lected from the whole statute. If a mistake in the Act renders the intention doubtful Courts may look to the title and preamble as well as to the body of the Act in ascertaining the Legislative intent.                                                p. 635

Section 29 of Article 3 of the Constitution, requires that the title to a statute should sufficiently describe the subject-matter of the legislation; but it is not necessary that it should give an abstract of the Act. The object of this provision is that the Legislature and the public may be informed by the title as to the general nature of the provisions proposed to be enacted, and to prevent deception.                            p. 632

As the title of Chapter 823 of the Acts of 1912 apprized both the Legislature and the public, that a number of the sections of the Code relating to justices of the peace and constables of Baltimore City were to be repealed and some to be re-enacted with amendments, and that additional sections were to be added; this was a sufficient compliance with Article 3 of the Constitution and sufficient to put any person interested upon inquiry.                                        p. 632

The title of Chapter 823 of the Acts of 1912 provided for the repeal of section 629 of Art. 4 of the Code of Public General Laws, title "Baltimore City," sub-title "Justices of the Peace"; and further provided for the repeal and re-enactment of certain other sections of that article relating to justices of the peace; the enacting clause of the Act provided only for the repeal and re-enacting of section 629, "so as to read as follows:" *Held,* that the several sections in the title of the Act which were said to be repealed and re-enacted and which were found in the body of the Act (all relating to the same general subject), are to be considered as taking the place of sec. 629, declared to be repealed and re-enacted by the enacting clause; and as the fourth section of the Act repealed all Acts or parts of Acts inconsistent with the provisions of Chapter 823, section 629, which was declared by the enacting clause to be repealed and re-enacted, could not cause any confusion.                                            p. 636

The section numbers prefixed to the paragraph of an act are no vital part of the act itself; while of convenience for the purpose of orderly arrangement, or to facilitate the finding

of a particular provision, they are not so essential that their omission or transposition ought to be permitted to set aside completely provisions in themselves clear and unambiguous.

p. 635

An Act providing for different classes of justices of the peace payable by salaries in lieu of fees, and with varying salaries, is not unconstitutional as seeking to accomplish by indirection what can not be done directly. · p. 637

As the Act provides for a justice of the peace from each ward of Baltimore City, the Constitution is not violated by providing for the appointment of additional justices of the peace as magistrates at large. p. 640

In construing a statute such construction should be adopted, if fairly possible, as will avoid a conclusion that will make the statute unconstitutional, the presumption being that the legislature does not intend to violate the Constitution.

pp. 640, 641

The meaning of a constitution may be established by long continued acquiescence and approval, and a power exercised by the General Assembly from the adoption of the Constitution for a long period of time without question is strong evidence of the possession of such power by that body. p. 641

A constitutional provision for the appointment of justices of the peace for Baltimore City for each of the wards of said city, does not require them to maintain their offices in the ward for which they were appointed; and where an appointment is made for the city at large it is sufficient that they maintain their offices within the city, and therefore it is no objection to Chapter 823 of the Acts of 1912 that the justices designated to hold the People's Court have but a single place in the city for the conduct of trials. p. 642

The fee table for justices of the peace is not affected by Chapter 823 of the Acts of 1912 in so far as the costs to litigants are concerned. The Act only relates to the ultimate disposition of the fees. p. 642

Under the Constitution, the terms of all civil offices (including justices), unless otherwise provided by law, commence on the fist Monday of May next ensuing their appointments.

p. 642

A justice of the peace appointed prior to the time when the Act of 1912 became operative could not by qualifying in anticipation, change the time of the commencement of his term from that prescribed by the Constitution so as to give him a vested right in any fees.                    pp. 642-643

Chapter 823 of the Acts of 1912 does not create a new Court; it merely provides the machinery by which litigants, where small amounts are involved, can have their cases heard and determined by justices supposed to possess peculiar fitness. They do not act in *banc,* but each individual singly, as a justice.                         p. 643

The word "vacancy" in Article 4 of the Constitution relating to appointments by the Governor, has no technical or peculiar meaning and is to be understood in its ordinary signification of "unoccupied".                    p. 644

The requirement of the Constitution that nominations of appointees for civil office should be made within fifty days from the commencement of each regular session of the Legislature applies only to appointments under laws in force at the beginning of the session, not to appointments by the Governor under laws passed during the session.      p. 644

The right of appeal from judgments rendered by justices of the peace provided by Article 5, section 86, of the Code is not affected by Chapter 823 of the Acts of 1912.     p. 644

Under Article 4, section 42, of the Constitution, constables for the City of Baltimore are to be appointed by the Mayor and City Council acting in their corporate capacity, by ordinance; and appointments by the Mayor alone confirmed by one branch of the City Council as provided in Chapter 823 of the Acts of 1912 are unconstitutional and void.      p. 646

*Decided December 16th, 1912.*

Appeal from the Superior Court of Baltimore City (AMBLER, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, PATTISON AND STOCKBRIDGE, JJ.

*Philip B. Perlman* (with whom was *Samuel Want, Lewis H. Ashman* and *William D. Roycroft*), on the brief for the appellant.

At the suggestion of the Court of Appeals, *S. S. Field,* the City Solicitor of Baltimore City, and Eugene O'Dunne, as *amici curiae,* argued and filed briefs in support of the constitutionality of Chapter 823 of the Acts of 1912.

At the request of the Governor and by leave of the Court of Appeals, *Edgar Allan Poe,* the Attorney General, argued for the constitutionality of the same Act and filed a brief in its support.

*James Hewes,* for the appellee *in propria persona.*

At the suggestion of the Court of Appeals, *Edward M. Hammond* argued against the validity of the statute, and filed a brief in support of the contention, as did *Armstrong Thomas.*

STOCKBRIDGE, J., delivered the opinion of the Court.

This case not merely involves, but its determination depends upon the validity or invaldity of an Act of the last session of the Legislature of this State, popularly known as, "the People's Court Act."

The General Assembly of Maryland at the Session of 1912 passed an Act, Chapter 823, bearing the following title:

"An Act to repeal section 629 of Article IV of the Code of Public Local Laws of Maryland, title "City of Baltimore," sub-title "Justices of the Peace and Constables," to repeal and re-enact with amendments section 206, sub-title "Constables," and 623, 624, 625, 627, 628 and 648, sub-title "Justices of the Peace and Constables," of said Article

IV and to add three additional sections to said Article IV to follow immediately after said section 625 as amended, and to be known respectively as sections 625A, 625B and 625C."

The Act thus entitled was approved by the Governor on the eleventh of April, and by its terms provided that it should take effect on the second of May following.

The evident design in the passage of this law was to bring about certain radical changes in the trials of petty civil cases before justices of the peace. The provisions contained in the body of the Act had reference only to such causes in the City of Baltimore and defined and prescribed the jurisdiction, powers and duties of justices of the peace in respect to such trials. No change was made in the existing law for any other portion of the State, or in the local laws relating to the powers and jurisdiction of justices in criminal cases.

The general scope of the Act was as follows: Power was given to the Governor, by and with the advice and consent of the Senate to appoint one hundred and one justices of the peace for the City of Baltimore, an increase of five over the number previously fixed by law. Of the total number, six were to be appointed from each legislative district, one from each of the wards comprising the district, and six at large, and the remaining fifty-three were to be appointed from the city at large, from such ward or wards as the Governor might elect. After the appointments had been made the Governor was empowered to designate from the justices of the peace so appointed, a "presiding justice of the peace of the People's Court and four associate justices." Those thus selected for these positions were to receive salaries of $2,500 and $2,100 respectively in lieu of the fees previously paid to justices in the civil causes tried before them. Civil suits instituted before any of the one hundred and one justices might be made returnable before the presiding justice of the People's Court, or before the magistrate issuing the summons, and the right was given to either party to a litigation to have his case removed from the magistrate issuing the

summons to the People's Court for trial, by presenting a
request in writing for such removal.  Other justices than
those named to act as of the People's Court were to receive
a salary of ten dollars per annum, in lieu of the costs as
theretofore provided.  The hours of holding sittings for the
trial of cases were also prescribed, and the place.  The re-
mainder of the Act was taken up with the appointment of
constables, prescribing their duties and fixing their com-
pensation.

The appellant in this case having been sued by William
R. Fardwell before a magistrate not so assigned as one of the
justices of the People's Court, presented his request for a
removal as provided in the Act and was refused, and there-
upon made application to the Superior Court for a writ of
mandamus to compel such removal.  His application was
dismissed upon the ground that the applicant had a right
of appeal from any judgment which the justice might ren-
der to the Baltimore City Court, and before that tribunal
the petitioner could have the equity and right of his case
determined.  But it is not enough that a tribunal should be
found in which a litigant can have his case fairly heard and
determined; he is entitled to have it so heard and deter-
mined in the forum provided by law.  *Sweet* v. *Hulbert,* 51
Barb. 312; *Wyman* v. *Spokane,* 2 L. R. A. n. s. 568.  The
Act of 1912 was intended to provide such tribunal, and if
the Act was valid, then the law provided the appropriate
forum in which either party was entitled, as matter of right,
to have his case passed upon, and he could not be deprived
of this right merely because there was some other forum
before which upon appeal his case might be heard and the
equity and right of his controversy established.  This is in
exact conformity with the long established practice in the
City of Baltimore with reference to suits brought before a
magistrate, other than the one of the ward in which the
defendant resided.  In such cases the right of appeal existed
equally with the present case, but the existence of that right

has never been construed to take away from a defendant his statutory right to have such a case removed for trial before the justice of the ward or election district of the defendant, and the writ of mandamus has been not infrequently resorted to, and allowed to enforce this statutory right of removal. If, therefore, Chapter 823 of the Acts of 1912 was valid legislation, the petitioner was entitled to the issuance of the writ; if invalid, the respondent, James Hewes, was right in his refusal to grant the application for removal, and the petition for the writ of mandamus was properly dismissed.

This leads to a consideration of the Act of 1912, the validity of which is attacked as being in contravention of the Constitution of the State. The first objection which is made to this Act relates to the title, which is claimed to be in conflict with the provisions of section 29 of Article III of the Constitution. This section requires that "every law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title"; and it is insisted that the present Act is not sufficiently descriptive of the contents of the Act itself. This objection is one which is frequently made when the constitutionality of an Act of the Legislature is called in question. In the case of the *County Commissioners of Calvert County* v. *Hellen,* 72 Md. 603, this Court had under consideration an Act the title of which was "An Act to create a Treasurer for Calvert County, and to provide for the collection of taxes therein." In the body of the Act provision was made that the treasurer might appoint a deputy and pay him a salary, and the contention was that this not having appeared in the title, it was defective and void under the constitutional requirement, but the contention was not sustained. The rule by which to test the sufficiency of a title is stated in *Bond* v. *Mayor and City Council of Baltimore,* 116 Md. 683, as follows: "It (the provision of the Constitution) has been invariably held to mean that the title shall sufficiently describe the subject-matter of the legislation, but that it need not give an abstract

of the Act." See also *Worcester Co.* v. *School Commissioners,* 113 Md. 309; *Phinney v. Sheppard,* 88 Md. 637, *Mealey* v. *Hagerstown,* 92 Md. 744. In *Devery* v. *Coler,* 173 N. Y. 103, the rule was stated in this way: "It is sufficient if the title expresses substantially the subject. It is not necessary that the most perfect expression should be adopted. The object of the requirement of the Constitution is that legislators and the public may be informed by the title of the general nature of the provisions proposed to be enacted, and to prevent deception." In this case the title of the Act apprised both the members of the Legislature and the public that a number of sections relating to justices of the peace and constables in the City of Baltimore were proposed to be repealed, and that some of them at least were to be re-enacted with amendments, and three additional sections were to be added. That was sufficient to put anyone who was interested in the subject-matter upon inquiry, and there was nothing which could mislead as to the main object of the Act. Every objection which can be urged against this Act on the ground of supposed defect in the title was urged against the validity of a somewhat similar Act, Chapter 147 of the Acts of 1900, relating to justices of the peace in Baltimore County. That Act was before this Court in the case of *Herbert* v. *Baltimore County,* 97 Md. 639, and the Act was sustained, and so far as the present contention rests upon objection to the title of the Act, it must be regarded as conclusively settled by the *Herbert case.*

The next objection to the validity of the act under consideration is a discrepancy between the title and the enacting clause of the first section. That clause reads as follows:

"Section 1. Be it enacted by the General Assembly of Maryland, That section 629 of Article IV. of the Code of Public Local Laws of Maryland, title "City of Baltimore," sub-title "Justices of the Peace and Constables," be and the same is hereby repealed and re-enacted so as to read as follows:"

The discrepancy first appearing is that by the title, section 629 is said to be repealed, while by the enacting clause it is declared to be repealed and re-enacted. This presents a condition very similar to that before this Court in *Stiefel* v. *Maryland Institution,* 61 Md. 144, where the title of an act was to repeal only while in the act itself there was contained a second section which enacted new and affirmative legislation. In the present case the title of the act is to repeal section 629, but it does not stop there as did the act considered in the *Stiefel Case,* but names certain additional sections, said to deal with the same general subject-matter, which are said to be repealed and re-enacted, thus giving notice that the act was not a repealing one merely, but that it did contain affirmative enactments relating to justices of the peace. If then the body of the act be examined to ascertain what the affirmative action proposed was, the following condition is disclosed: There is no provision in any way akin to the matter contained in the section 629 said to be repealed, and which section read:

"Each of the justices of the peace appointed for any legislative district shall keep his office within the limits of the legislative district for which he may have been appointed, except as provided in the succeeding section."

It is, therefore, evident that the legislative purpose was, as set forth in the title, to repeal section 629 entirely. The remaining sections named in the title were 206, which dealt only with constables and which will be considered separately later, and 623, 624, 625, 627, 628 and 648, which related both to justices of the peace and constables. None of these sections were mentioned in the enacting clause, but in the body of the act we find provisions fully covering the subject-matter contained in each and all of these sections. It is further to be observed in the reading of the act that while there is a section 1 and sections 3 and 4, there is no section bearing the number 2. That there was an error committed in copying the bill, either when it was being enrolled or engrossed seems probable, the error consisting in the omis-

sion of the section number and the enacting words in what had been a second section, and the addition to the first section of the words, "and re-enacted to read as follows." That such was the real state of the facts is apparent in the following manner. At the April Term of this Court there was argued the case of *Little* v. *Schul,* 118 Md. 454. The printed volume of the Acts of 1912 had not appeared at the time of that argument, but there was included in the record in that case what purported and was agreed by counsel to be a copy of the Act now before us, and it was accepted as such by this Court in that case, though the act was not deemed material to the decision of it. In that supposed copy the first section of the act was a repeal of section 629 and nothing further, then followed a section 2 in which sections 623, 624, 625, 627, 628 and 648 were repealed and re-enacted exactly as set forth in the title of the act.

For a proper consideration of the case, it is necessary to divide it into two parts, one the provisions relating to justices of the peace, the other those dealing with constables.

As to justices of the peace:

The discrepancies between the title of the act and the enacting clause being as pointed out, the first question for determination is, how far can the title of an act be looked to for the purpose of helping out the body of it. Undoubtedly the earlier cases, and particularly the English cases, held that the title was no part of the act, and therefore could not be regarded at all. The other extreme view is that represented by the case of *Wilcoxon* v. *City of Bluffton,* 153 Ind. 267, which held that a constitutional provision that the subject of every act shall be expressed in the title, operated to make the title a part of the act itself. The rule adopted in Maryland in the case of the *Canal Co.* v. *The R. R. Co.,* 4 G. & J. 90, and adhered to consistently ever since, is that given in *Sutherland on Statutory Construction* sec. 410, taken from the leading case of *Nazro* v. *Insurance Co.,* 14 Wis. 295, that "legislative enactments are not to be defeated on

account of mistakes, errors or omissions, *provided the intent of the legislature can be collected from the whole statute.* If a mistake in the act of the legislature renders the intention doubtful, the Courts may look to the title and preamble, as well as the body of the act for assistance in determining such intention." See also, 26 *Am. & Eng. Ency.* 629, *Henderson v. Md. Home Ins. Co.,* 90 Md 47; *State v. Archer,* 73 Md. 61. That there was an error committed and what that error was is perfectly apparent, but it is equally clear from a reading of the body of the act what was intended to be accomplished by it. To permit a mistake of this nature to defeat a clearly expressed purpose of the legislative body would be to set the letter above the spirit of an enactment, and to put a premium upon tampering with a measure while on its course through the Legislature. The section numbers prefixed to the paragraphs of an act are no vital part of the act itself. Standing alone, they impart neither force, meaning or vitality to a measure, and while of convenience for the purpose of orderly arrangement, or to facilitate the finding of a particular provision, they are not so essential that their omission or transposition ought to be permitted to set aside completely provisions in themselves clear and unambiguous. *Wilson v. Spaulding,* 19 Fed. 304. What has just been said is equally applicable to the apparent omission of an enacting clause for a second section of the act. Instances of similar omissions have occurred several times in this State. In *McPherson v. Leonard,* 29 Md. 377, the words "by the General Assembly of Maryland" were omitted from an enacting clause, but the omission was held not to invalidate the act. A like omission was before this Court in *County Commissioners v. Railroad Co.,* 113 Md. 182, and in the *Postal Tel. Co. v. State,* 110 Md. 611, the enacting clause of the act under consideration read, "Be it enacted by the people of the State of Maryland represented in the General Assembly," but in each instance the act was sustained. It was for a time supposed that the rule laid down in *McPherson v. Leonard, Supra,* had been modified, if not overruled

by the decision in *Archer* v. *State*, 74 Md. 449, the opinion of the Court being written by JUDGE MILLER, but that such was not its effect is conclusively shown in the two subsequent cases above cited, in opinions written by CHIEF JUSTICE BOYD and JUDGE THOMAS, respectively.

In the present case, the several paragraphs to which are prefixed various numerals, might be construed to take the place of the single section declared to have been repealed and re-enacted in the enacting clause, and inasmuch as the fourth section of the act repeals all acts or parts of acts inconsistent with the act then passed, no confusion would result.

We come now to consider the alleged grounds of unconstitutionality of the Act of 1912 other than those relating to the title and the enacting clause. Foremost among these is the objection that if the proposed Act is permitted to ·stand it will operate to create classes among the Justices of the Peace by providing for some a salary of $10 per annum, for others a salary of $2,100 per annum, and for one other of $2,500 per annum. This is not the first time when distinctions have been drawn in the compensation provided by the General Assembly to be paid to Magistrates. Many years ago the Legislature provided for the designation by the Governor from among the Magistrates appointed by him, and confirmed by the Senate, of a certain number to sit at the station houses in the City of Baltimore, and that those thus selected should be paid a salary of $125 per month, while the compensation of the rest of the justices was dependent on fees; this created a distinction of the very nature now complained of, yet it was universally accepted and acquiesced in. In 1900 the Legislature, by Chapter 147, provided for a like designation by the Governor from among the Magistrates appointed for Baltimore County, of certain ones to sit at the station houses, and provided that they should receive for services rendered in criminal cases a sum not exceeding $40 per month, and that other justices in the county should not be entitled to receive more than $10 per month for any services which they might render in criminal cases. This

distinction so drawn was attacked as in violation of the Constitution, but was upheld in the case of *Herbert* v. *Balto. Co.,* *supra,* and in 1904 the Legislature by Chap. 521, provided in the City of Baltimore for an additional justice of the peace, at large, to be known as the "Magistrate for Juvenile Causes," gave to such justice the power to appoint a clerk, conferred upon him *exclusive* jurisdiction in certain classes of cases and provided that he should be paid a salary of $2,500 per annum; and the validity of the Act of the Legislature in so doing has never been called in question. In view of these several, successive, similar Acts and the decision before cited, this Court can not at this time, under the facts as they appear in this case, set aside the Act of the Legislature in question upon the ground of the creation of classes by the making of different bases of compensation. It will hardly be questioned that it was competent for the General Assembly to provide for the remuneration of justices upon either a fee basis, or by way of definite salaries, and such being the case it is difficult to see any constitutional objection to the power of the Legislature to change from one method of compensation to the other. But it is urged that when the Act which seeks to make the change provides a salary of $2,100 for a few and $10 per annum for the great majority, it is for the purpose of driving out from the justices all but the favored few, and that as this can not be done directly, neither can it be done by indirection. The case of the *People* v. *Howland,* 155 N. Y. 270, strongly sustains this view, though that case was decided by a bare majority of the Court, and so eminent a jurist as Chief Justice Parker dissented from the conclusion reached by the majority. An Act of the Kansas Legislature was far more drastic than the one now before us. It took from justices of the peace jurisdiction in all suits where the amount involved was in excess of one dollar, and the constitutionality of the Act was attacked on the same ground as that now under consideration, viz, that it amounted to virtually an abolition of the office, which as an office recognized by the Constitution, the Legislature had no power

to do. But the Act was sustained, the Court saying, "That while little more than the name remained to the office, yet inasmuch as it was not abolished, the Act was valid because it was left by the Constitution to the Legislature to define the powers and duties of justices." *In re* Greer, 58 Kan. 268. The opinion in the case of *The People* v. *Howland, supra*, can not therefore be regarded as necessarily controlling of this case. Moreover, the Act of 1912, Chapter 823, does not restrict the compensation of justices to the salary of $10 per annum, but expressly gives them "the right to charge and retain all fees arising from the taking of acknowledgments and affidavits."

It is argued that the Constitution has been violated by the Act of the Legislature now under consideration in that it provides for the appointment of magistrates at large, whereas, the constitutional provision is, "That the Governor by and with the advice and consent of the Senate shall appoint such number of justices of the peace * * * for * * * the several wards of the City of Baltimore as are now or may hereafter be prescribed by law," and that therefore, there can be no appointment unless it be an appointment for a definite ward. Possibly some little light may be thrown on this contention by reviewing very briefly, the history of the appointment of magistrates. Under the Constitution of 1776, Article 48, it was provided that, "The Governor for the time being with the advice and consent of the Council may appoint the Chancellor and all judges and justices * * * and all other civil officers of government," but prescribed no number, even inferentially or for what territory they should act, or from or for what political sub-division they should be appointed. The General Assembly by an Act passed in June 1777, Chapter 12, prescribed the jurisdiction of justices as to amount, and laid down the method of their procedure. By its terms the Act was to be effective for three years, but it was continued in force by successive Acts down until 1835. By Chapter 201 of the Acts of the General Assembly of that year, there was provision made

for a Justices' Court, under which they were styled "District Judges" were vested when not sitting as a Court with all the powers, duties and jurisdiction of other justices, and such other and further jurisdiction within their respective districts as might be provided by law; section 6 of the Act provided for the designation of one of these justices as the chief justice, and section 7, made provision for the keeping of dockets, and by the Act of 1836, Chapter 305, the Justices' Court was given an appellate jurisdiction in all cases tried before a single justice. This Act was recognized as a valid exercise of legislative power in *Beall* v. *Black,* 1 Gill, 206, and *Carter* v. *Tuck,* 3 Gill, 251.

When the people of this State came to adopt a new Constitution in 1851, they provided in that instrument that the Legislature should at its first session after the adoption of the Constitution, fix the number of justices of the peace for each ward in the City of Baltimore, and for each election district in the several counties, "who shall be elected by the legal and qualified voters thereof respectively at the next general election for delegates thereafter," and pursuant thereto, an Act was passed (Acts of 1852, Chapter 274) which was subsequently codified as section 619 of Article IV of the Code of Public Local Laws, 1860, by which one or more justices were provided for each ward. There was no requirement, either in the Constitution, or in the Act itself, as to the residence of the justices, but section 620 of the Code of 1860, did require every justice to keep his office or place for the transaction of business within the ward in which he may have been elected. It was of course probable that the people of a ward would elect a resident of their own ward or district as a justice, but it was not so stipulated in the Act, and the Constitution and the Act would have been fully gratified by the election of one who was not a resident of the ward, provided he complied with the provision of section 620, and kept his office for the transaction of business within the geographical limits of the ward. The election of magistrates does not seem to have worked entirely success-

fully, for in the Constitution of 1864 their choice was no
longer left to an election by the people, but following the
course laid down in the Constitution of 1776, vested the
power of their appointment in the Governor, by and with
the advice and consent of the Senate. This change was to
some extent a matter of debate, though the greater portion
of the debate turned upon whether the appointment of the
justices should be by the judges or by the Governor, and it
was finally left in the hands of the Governor. The interval
between 1864 and 1867 was very brief, and the present sec-
tions 42 and 43, Art. 4 (1867), were, with two unimportant
verbal changes, identical with sections 47 and 48, Art. 4, of
the Constitution of 1864. While there is nothing in the record
directly bearing upon it, it must be assumed that between
1864 and 1867 the Governor complied with the provisions
and made his appointments for the wards in the number fixed
by the legislature. The General Assembly under all of these
constitutions was given full power to prescribe by law the
number, compensation and jurisdiction of the magistrates;
it had likewise power to fix and alter the wards of Baltimore
City, or election districts of any county. It could if it had
seen fit have reduced the number of wards in Baltimore City
to two, and created legislative district political divisions, and
perhaps, as is done in New York, have divided it into assem-
bly districts, and if it had adopted this course any appoint-
ment, even though in name, for Ward No. 1 or Ward No. 2
would have been virtually an appointment at large. Can it
now be said that an act which in terms makes provision for
the appointment of a justice of the peace for each of the
wards of the City, and then further provides for the appoint-
ment of an additional number at large is violative of the
Constitution? The Constitution nowhere inhibits such
appointments; every requirement of the fundamental law is
gratified when the act expressly enjoins that a justice shall
be appointed from each ward. It is to be borne in mind
that, "in construing a statute such a construction should be
adopted, if fairly possible, as will avoid a conclusion that

will make it unconstitutional, the presumption being that the
legislature does not intend to violate the Constitution." *Commonwealth* v. *Herr*, 78 Atl. Rep. 68 (Penna.). See also
*Cooley on Constitutional Limitations*, 87; *In re Likins*, 72
Atl. Rep. 858.

The present Constitution of this State was adopted in the
year 1867. Three years later the General Assembly, in the
exercise of what it conceived to be its power, by Chapter 45,
provided in the City of Baltimore in addition to two justices
of the peace for each of the several wards, that the Governor
should appoint four justices at large; by the Act of 1876,
Chapter 28, the provision for four justices at large was
repealed, and six authorized to be appointed; and from that
date on the number has been from time to time increased,
and a similar provision has been made in some of the counties of this State, yet not until the Act of 1912 was passed,
has the constitutionality of such provision been called in
question. There is thus a period of forty-two years, during
which the people of this State have acquiesced in and
approved the interpretation so placed by the General Assembly upon the Constitution, and it is "by universal acquiescence and approval that the meaning of the Constitution is
established." *In Re Opinion of the Justices*, 79 Atl. Rep.
31. The same doctrine has been repeatedly recognized in
Maryland. In *Cathedral* v. *Manning*, 72 Md. 130, this
Court, speaking through the late CHIEF JUDGE McSHERRY,
said: "A contemporaneous construction placed upon a particular provision of the organic law by the legislative department of the government, acquiesced in and acted upon without ever having been questioned, followed continuously and
uniformly from an early period down * * * furnishes a very
strong presumption that the intention is rightly interpreted."
And in the *State* v. *Mayhew*, 2 Gill, 487, it was said, "a
power exercised by the General Assembly from the adoption
of the Constitution to the present time, ought to be deemed
almost conclusive evidence of its possession by that body."
See also *Bradford* v. *Jones*, 1 Md. 369.

With regard to the objection that under the Act of 1912 the justices designated to hold the People's Court have but a single place in the City to hold their trials, to the great inconvenience of those living on the outskirts of the City who may be summoned to appear before them, the all sufficient answer is, that this is a matter entirely within legislative control. The most that can be claimed for the Constitution is that it requires the appointments to be made for the wards. The General Assembly, it is true, did at an early date require them to maintain their offices in the wards for which they were appointed. This it subsequently changed, and only required them to keep their offices in the legislative district for which appointed, and where an appointment may be and is made for the city at large, the only logical requirement which can be imposed is, that such appointees shall have their offices for the transaction of business within the boundaries of the city.

The appellee, however, claims that the effect of the act is to repeal that portion of the Code which prescribes the fees to be charged in civil cases, and that inasmuch as he qualified as a magistrate before the second day of May, 1912, he had become entitled, as a vested right, to the office and the fees, because of the constitutional provision, Art. III., sect. 35, that the salary or compensation of any public officer shall not be increased or diminished during his term of office. The answer to both of these propositions is plain and complete. The fee table is not affected by the Act so far as the costs to the litigants themselves are concerned, but it is by implication, and expressly by sect. 4 of the Act, repealed in so far as it relates to the ultimate disposition of those fees, and this it was perfectly competent for the General Assembly to do. With respect to the second point, the Constitution, Art. IV., sect. 42, creates a term of two years for justices of the peace, and by Art. II., sect. 13, it is provided that the terms of all civil officers unless otherwise provided by law, "shall commence on the first Monday of May next ensuing their appointment." The first Monday

of May, in the year 1912, fell on the 6th day of the month, the act in question became operative on the second, and it was beyond the power of the appellee by qualification in anticipation, to alter the time of the commencement of his term as a justice from that prescribed in the Constitution.

The further contention is made that the act, if it has any force at all, operates to create a new Court, and that in a manner different from the mode laid down in the Constitution. In this view we are unable to agree. What it endeavors to do is to change the manner of the compensation of the justices of the peace in Baltimore City, and in some degree to modify the exercise of their jurisdiction. The evident intent of the legislative body was not the creation of a new Court, but to provide the machinery by means of which litigants, where small amounts were involved, should be able to have their cases heard and passed upon by justices of the peace, to be selected from a large number, because of their supposed peculiar fitness for the proper hearing and adjudication of petty cases. They were not to sit *in banc,* but each one individually in his capacity of a justice of the peace, nothing more. In *Wales* v. *Belcher,* 3 Pick. 508, the Legislature of Massachusetts had passed an act creating a Justices' Court for the county of Suffolk, and giving it exclusive jurisdiction in certain classes of cases. That act was attacked, as is this, on the ground that it was the creation of a Court in a manner other than that provided by the Constitution, and the further ground that the office of justice of the peace was recognized by the Constitution, and that the legislature could not abridge the powers of these officials. In sustaining the act, the Massachusetts Court said: "The power and jurisdiction of that office is nowhere limited or defined in the Constitution. The legislature has the right to mould the jurisdiction of the Courts at will, so as not to infringe any other provision of that instrument. It may enlarge or diminish the power, and duty of Courts and magistrates. All this authority, if not expressly given to the legislature, would result from the

very nature of the legislative power, nor is it any objection to the act that its application is local only."

It has been strongly urged upon the 'Court that even if the act be not void because obnoxious to the Constitution, nevertheless it did not present the case of a vacancy, which under the Constitution, the Governor had any power to fill, until the meeting of the General Assembly in 1914. What constitutes a vacancy is not a question of any serious difficulty, there is no technical or peculiar meaning to the word "vacancy" as applied to an office. It is to be understood in its ordinary signification of unoccupied. If the act had in fact created a new office, then there was a vacancy from the time it took effect until it was filled by appointment by the Governor, *Cline* v. *Greenwood,* 10 Or. 230. The requirement of the Constitution that nominations of appointees for civil offices shall be made within fifty days from the commencement of each regular session of the legislature applies only to appointments under laws in force at the beginning of the session, not to appointments made by the Governor under laws passed during the session. *Merrill* v. *School Commrs.,* 70 Md. 269; *County Commrs.* v. *Hellen,* 72 Md. 603.

But in our view there were no new offices created by the Act of 1912 to be filled by the Governor, or if there were, they were the offices of five additional justices of the peace. The most important duty imposed on the Governor by the act was that of designating from among the justices appointed and confirmed, which of them were to perform the duties required by the act of justices of the People's Court.

During the argument it was suggested as a reason for the invalidity of the act, that no provision was made, by express terms, for an appeal from any judgment which might be rendered by any of the justices. It is difficult to suppose that this was intended to be taken seriously. The right of appeal from judgments rendered by justices, is fully provided for by Art. 5, sec. 86, Code P. G. L. (1912), and there is nothing in this act which in terms, or by fair impli-

cation, can be said to be in derogation of the provisions of that section.

In an able brief submitted by Mr. Armstrong Thomas, many authorities were cited for the proposition that a justice could not perform any valid acts outside of the limit of his ward or district. A careful examination of these cases shows, however, that in nearly every instance the decision was based on the phraseology of some statute, and even where that does not clearly appear it will be readily understood and assented to that official acts of a justice, must be performed within the limits of the jurisdiction established by the legislature, but giving full force and effect to such a rule, can in no manner affect the valid character of an act performed within the City of Baltimore by a magistrate appointed and commissioned for the city at large. Before closing the opinion on this branch of the case, the Court deems it proper to make acknowledgment for the assistance rendered, at its invitation, by the attorney general, the city solicitor of Baltimore, and Mr. O'Dunne in support of the act, and by Messrs. Hammond and Thomas on behalf of the contention of the appellee. The importance of the case and the result which might ensue from its decision were such that the Court felt it to be of public importance that the fullest light possible should be shed upon the various questions involved.

From what has thus far been said, it follows that in the view of this Court the trial Court erred in refusing the application for a mandamus, and that the act, Chapter 823 of the Acts of 1912, was constitutional in so far as it related to magistrates, unless this portion was so intimately interwoven with the provisions relating to constables, that the Court could see that the legislature would not have enacted the one without the other. It, therefore, becomes necessary to consider the provisions of the act in relation to constables. Unfortunately, this was but incidentally referred to in the argument, and this Court is, therefore, without the assistance which is derived from briefs and the argument of counsel,

646          LEVIN *vs.* HEWES.

but for the reason indicated, it seems necessary to pass upon it, and by so doing it may possibly obviate further litigation on this point.

The Constitution in Article IV; section 42, provides that the Mayor and City Council of Baltimore shall appoint such number of constables for the several wards of Baltimore City as are now or may hereafter be prescribed by law. By the Act in question it is provided that "There shall be one constable for every ward in the City of Baltimore, who shall be appointed by the Mayor in the mode prescribed in Sect. 25" of Article IV. The provisions of that section are for the appointment by the Mayor and the confirmation of the appointment by the Second Branch of the City Council. The question thus presented is, Does the provision of the Act gratify the constitutional requirements? Clearly it does not. This precise question was passed on by this Court in *Little* v. *Schul,* 118 Md. 454, where it was held that the language "Mayor and City Council of Baltimore," had reference to the municipality in its corporate capacity, and must be exercised by ordinance. When, therefore, the Act in question attempted to substitute for an appointment by ordinance, an appointment by the Mayor, and confirmation by one branch only of the City Council, it provided a different mode of selection of constables from that laid down in the Constitution, and was therefore inoperative and void. It is true that in the *Schul case,* the appellee who was one of those named in the ordinance which had been passed by the Mayor and City Council in March, 1912, failed to obtain the office, but this result followed, not because he had been displaced by the Act of 1912, but because he had permitted the time allowed for his qualification to pass by without qualifying, and for that reason had forfeited the office under the terms of the Code (1912), Article 70, Section 11.

Holding, as we must, the provision of the Act of 1912 as to the mode of the appointment of constables void, if we

assume that all of those named as constables in the ordinance passed by the Mayor and City Council forfeited their positions by not qualifying within the time prescribed by the statute, what is the present condition as to constables, and what the remedy? Clearly all positions of constables in the City of Baltimore are at this time vacant, but they can be filled at any time by the passage of an ordinance by the Mayor and City Council in the mode prescribed by law, a proceeding which will require but a few days for its completion.

The section of the local laws included as a part of the Charter which provides for constables required that there should be two constables for every ward of the City of Baltimore. The Act of 1912 sought to reduce this number one-half and established a graduation in salaries ranging from $1,800 per annum for the chief constable to $1,000, and imposed a variety of duties essentially different in character from those theretofore performed by such official. The change was therefore of a radical nature, involving a reduction in number, an entirely different mode of compensation, and with new and additional duties to be performed. The Legislature undoubtedly possessed the power to do each and all of these things, but would it have done them if it had realized that it had established a mode of appointment which could not be given effect under the Constitution? It does not so appear to this Court. Duties were specifically prescribed for twenty-four constables, not for forty-eight. If the Act be treated as valid as to the duties of the constables, and as that number must, until properly changed by the Legislature, remain at forty-eight there would be one-half of the number for whom no duties whatever are provided. There would be no warrant of law for the compensation by way of salary of more than twenty-four, and there could be no compensation by law of fees, since by the paragraph identified by the number 624, it is made the duty of the justice and the condition of his bond, that shall account for and

pay over "all fines, penalties and forfeitures, and *all fees,*" to the respective officers entitled to receive the same. Other examples might readily be cited to show how intimately the functions of constables, as contemplated by the Act, were interwoven with the method of appointment provided, and there seems no escape from the conclusion that since the selection of constables in the manner provided by the Act must fail, the other provisions relating to constables must fail also.

The final question then presents itself, as to the effect of holding the act valid as to justices of the peace, but void as to constables. Is it not to so criple the work of the justices who have been designated as justices of the People's Court, as virtually to put an end to their disharge of their duties, and thus frustrate the whole purpose of the Act? By no means. Constables have been appointed for particular wards for a long period of time, justices at large for legislative districts, or for the City have been in existence for many years, yet there has never been any practical difficulty in a justice at large having his processes or subpoenas served by a duly appointed and qualified constable. As already pointed out the offices of constables in the City of Baltimore must now be regarded as vacant, unless some one or more of those appointed under the Ordinance No. 87, passed and approved March 19th, 1912, qualified within the thirty days following the approval of the ordinance, but such vacancies can be filled at any time by the Mayor and City Council of Baltimore by ordinance duly passed. These appointments must be of forty-eight constables, the Act of 1912 being inoperative to reduce the number, and these forty-eight constables will be entitled to compensation by fees in accordance with the table contained in sections 14, 15 and 17 of Article 36, Code P. G. L. (1912), because, for the reasons already given, the attempt to substitute salaries in place of fees fails. These fees, as and when collected are the mode and the sole mode for their compensation, and therefore payable as here-

tofore to them, and do not constitute any part of the costs within the meaning of the provisions of paragraph 624, to be accounted for by the justice and paid over to the clerk of the Court of Common Pleas or to the Register of the City of Baltimore, or for which the bond of the justice is liable. There will thus be double the number of constables contemplated by the Act of 1912, and that should be ample for the service of all writs and processes, whether issuing from one of the justices designated to perform duties as of the People's Court, or from any of those not so designated.

There remains only the question of the keeping of the dockets, the duty of which was by the Act imposed on the chief constable, but no reason appears why these cannot and should not be kept by the justices themselves, sanctioned as such a method is both by law and long established practice, and distinctly recognized in paragraph numbered 648 of the Act of 1912.

For the reasons given the order of the Superior Court dismissing the petition must be reversed and the case remanded.

*Order reversed and case remanded, appellee to pay the costs above and below.*