GEORGE B. WOELFEL *v.* STATE OF MARYLAND

GEORGE B. WOELFEL *v.* MAYOR, COUNSELOR AND ALDERMEN OF THE CITY OF ANNAPOLIS

GEORGE B. WOELFEL *v.* BOARD OF COUNTY COMMISSIONERS OF ANNE ARUNDEL COUNTY

[Nos. 5, 6, 7, January Term, 1940.]

*Decided November 29th, 1939.*

496

The causes were argued, as of the October Term, before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, JOHNSON, and DELAPLAINE, JJ.

*George B. Woelfel* and *Emanuel Klawans,* for the appellant.

*William C. Walsh, Attorney General,* and *William L. Henderson, Deputy Attorney General,* for the State.

*Benjamin Michaelson,* submitting on brief, for the Board of Commissioners of Anne Arundel County.

*Edward G. Chaney,* submitting on brief, for Mayor, Counselor and Aldermen of the City of Annapolis.

SLOAN, J., delivered the opinion of the Court.

Under the provisions and by the authority of article IV, section 42, of the Constitution of the State, and section 343, article 2 of the Code of Public Local Laws, passed in pursuance thereof, the appellant, George B. Woelfel, was, on April 26th, 1939, appointed by the Governor of Maryland a justice of the peace for the 6th Election District of Anne Arundel County, and the appointment confirmed by the State Senate, for the term of two years beginning the first Monday of May, (May 1st) 1939, qualified before the clerk of the Circuit Court for Anne Arundel County, and entered upon the performance of the duties of his office, and performed them until the month of June 1939, when he was interrupted by a petition for a mandamus, sued out by the State of Maryland at the instance of the Governor.

The whole structure of the magistrates' courts for the counties of the State was radically changed by the Act of 1939, chapter 720, approved May 17th, 1939, effective June 1st, 1939, by which provision was made for the appointment of one justice of the peace for each election district in every county of the State (section 42, article IV of the Constitution), and one or more at large in each county, to be designated as trial magistrates, and prescribed their respective jurisdiction, powers, duties, and compensation. The Act provided that for Anne Arundel County, "there shall be three trial magistrates, one of whom shall sit in Annapolis and receive an annual salary of $3000.00; one of whom shall sit in Ferndale and receive an annual salary of $2500.00; and one of whom shall sit in Galesville and receive an annual salary of $1500.00." Section 98. James G. Woodward, who promptly qualified, was appointed by the Governor as the trial magistrate for Annapolis.

The Act of 1939 (section 100) took away from all magistrates appointed for election districts nearly all the powers theretofore exercised by them, and reduced or fixed their compensation "* * * for their official acts and services in civil and criminal cases (at) the sum of $20.00 annually, but in Kent, Talbot and Queen Anne's Counties they shall receive annually the sum of $50.00; but they may retain all fees lawfully charged by them for taking acknowledgements or affidavits unrelated to their civil or criminal jurisdiction."

The powers of justices of the peace other than trial magistrates are defined and limited by section 93 of the Act of 1939, which reads as follows:

"93. Other Justices. Any civil or criminal action or proceeding instituted before a justice of the peace, other than a trial magistrate, shall be promptly removed by said justice, by a transfer of the original papers, with a copy of the docket entries, to the nearest or only trial magistrate of the county for trial and determination or other action within his jurisdiction; provided that before removal of a criminal case the justice of the peace

to whom a writ for the arrest of any person is returnable may take recognizance, as now or hereafter authorized by law, for the appearence of said person before the trial magistrate to whom said case is to be removed; and provided that any prosecution for the violation of an ordinance of an incorporated city or town shall be originally instituted only before a trial magistrate or other justice of the peace regularly exercising his functions within the limits of such municipality, and in the event there is no Justice of the Peace located in the corporate limits of such town, prosecution may be originally instituted before the nearest available Justice of the Peace."

The appellant did and does take the position that the Act of 1939 is unconstitutional, or is at least ineffective to interfere with him in the performance of the duties which he assumed by virtue of his appointment for the term of two years from May 1st, 1939, but that for the term of his office he has the same jurisdiction and powers as he had during the month of May, 1939, the State contending that after June 1st, 1939, his powers became limited by the provisions of section 100, *supra*. So, on June 27th, 1939, the appellant issued a warrant for the arrest of one William West for the violation of section 468 of article 27 of the Code of Public General Laws (carnal knowledge of a female, not his wife, between the ages of fourteen and sixteen years). West, on June 29th, 1939, gave bond for his appearance before the appellant for trial July 7th, 1939. On June 29th, the attorneys for both West and the State filed motions with the appellant to transmit the papers in the case to James G. Woodward, the nearest trial magistrate, in accordance with the provisions of section 93, article 52 of the Code of Public General Laws, Act of 1939, ch. 720, sec. 93. The motions were overruled, and thereupon the Governor authorized and directed the Attorney General "* * * to institute such proceedings on behalf of the State of Maryland, as may be necessary to require the said George B. Woelfel to transmit all the papers in the said case * * * to James G. Woodward, Trial Magistrate." Thereupon a petition

for the writ of mandamus was filed in the name of the State of Maryland against George B. Woelfel, an order to show cause was passed, and the respondent answered, admitting all the statements of fact alleged in the State's petition, but charged that the Act of 1939 was invalid, chiefly because it undertook to reduce his salary of $1500.00 a year as justice of the peace for Election District No. 6 to $20.00 a year, after he had begun his term of office, in violation of section 35, article III of the Constitution, which provides that "* * * the salary or compensation of (no) public officer (shall) be * * * diminished during his term," and that it is unconstitutional because it undertakes to deprive him of the right, power and jurisdiction to try the case in the warrant so issued by him and to divest him of the right to try cases during the term of his appointment and to change the tenure of his office.

The petitioner demurred, and its demurrer having been sustained, the respondent appealed.

The appellant applied for writs of mandamus against the Mayor, Counselor and Aldermen of the City of Annapolis, and the Board of County Commissioners of Anne Arundel County, to compel them to pay him the salaries which they were directed by section 361 of article 2 of the Code of Public Local Laws (Act of 1927, ch. 58), to pay, and which have been refused by them since June 1st, 1939. On demurrer by the respondents, their refusals were sustained and appeals taken by the petitioner. Although the three cases were argued together, the questions raised in them (6 and 7) and the first raised in No. 5, will be separately treated.

Aside from the effect the Act of 1939, ch. 720, has on the tenure of office of the justices of the peace appointed and qualified prior to its adoption, and the change in their compensation, the questions raised by the appellant are not wholly new in this court.

By the Act of 1912, ch. 823, the Governor was directed to select, from the justices of the peace appointed by him for Baltimore City, five who should be known as "Justices

of the Peace of the People's Court," at salaries of $2500.00 per year for the presiding justice, and $2100.00 each for the associate justices. All other justices of the peace were allowed salaries of ten dollars per year, and their power and authority so curtailed as to virtually deprive them of their offices, and, in *Levin v. Hewes*, 118 Md. 624, 86 A. 233, this was the burden of the contentions of counsel for appellee. In that case a civil suit had been brought before James Hewes, one of the ten dollar justices, the defendant requested a removal, as provided for in the Act, the request was denied, and the defendant, Levin, thereupon sued for a writ of mandamus, and on its refusal by the Superior Court, an appeal was taken to this court, the order reversed, and the Act of 1912 upheld. In *Levin v. Hewes*, this court cited and followed the Supreme Court of Kansas in the case of *In re Greer*, 58 Kan. 268, 48 P. 950, 952. The legislature of Kansas had established two city courts in Kansas City township, and so reduced the jurisdiction of the justices of the peace that they could not try criminal cases, and civil cases only where the amount claimed did not exceed the amount of one dollar. The constitutional provision in Kansas, with respect to justices of the peace, was that his "* * * powers and duties shall be prescribed by law." In the opinion it is said: "The legislature has prescribed his powers and duties by the enactment of a law otherwise unobjectionable. It has limited them, it is true, until but little more remains of the office than the name. It has not, however, totally abolished such office; and, while the bringing of a suit for the recovery of one dollar is so far to the verge of improbability as to be only within the limits of possibility, we cannot say that the office thereby ceases to exist. It is not said, and cannot be said, that the legislature is powerless to substantially reduce the jurisdiction of a justice of the peace, and, if such cannot be said, then to what point may not such reduction go? * *. * the constitution, in creating the office, implied no jurisdiction either of sum or subject, but, on the contrary,

declared that it should 'be prescribed by law.' It would not be unreasonable to say that what has thus been prescribed or allowed by law may be wholly taken away. But we are not driven to the necessity of so saying in order to sustain the act in question."

The judicial power of this state, according to article IV, section 1 of the Constitution, "* * * shall be vested in a Court of Appeals, Circuit Courts, Orphans' Courts, such Courts for the City of Baltimore as are hereinafter provided for, and Justices of the Peace," and there is no power in the Legislature to provide for any other courts. *Day v. Sheriff of Montgomery County*, 162 Md. 221, 159 A. 602; *Humphreys v. Walls*, 169 Md. 292, 181 A. 735; *Quenstedt v. Wilson*, 173 Md. 11, 194 A. 354. By section 42 of article IV it is provided that justices of the peace "* * * shall have such jurisdiction, duties and compensation" as "* * * shall be hereinafter prescribed by Law." The Legislature has frequently prescribed different salaries or compensation for justices of the peace, in Baltimore and the counties, in the same city and county, and such differences have been sustained here. *Herbert v. Baltimore County*, 97 Md. 639, 55 A. 376; *Levin v. Hewes, supra.* By the Act of 1882, ch. 219, and numerous acts since, police justices at substantial salaries have been designated by the Governor to sit at the station houses in Baltimore. The Act of 1902, ch. 611, amended by Acts of 1904, ch. 521, 1910, ch. 41, 1927, ch. 516, and 1931, ch. 542, provided for the appointment of an additional justice of the peace, on a salary, known as the Magistrate for Juvenile Causes. The validity of these Acts has never been questioned either as to salary, jurisdiction, or powers, with the presumptions in their favor which may be implied from public and legislative acquiescence over such long periods of time. *Trustees of Catholic Cathedral Church v. Manning*, 72 Md. 116, 130, 19 A. 599; *Levin v. Hewes, supra.*

The powers and jurisdiction of justices of the peace, other than the five justices of the People's Court, under the Act of 1912, ch. 823, were defined in sections 627,

the section attacked in *Levin v. Hewes, supra,* and in section 628, as follows:

"627: Every writ, warrant, summons or other process issued by any justice of the peace shall be made returnable before the justice of the peace issuing the same, or before the Presiding Justice of the Peace of the People's Court; and any plaintiff or defendant shall have the right of removal to the Presiding Justice of the Peace of the People's Court, which said justice of the peace shall have the right to try any such case or to assign the same for trial to any other justices of the peace of the People's Court." It was Justice Hewes' refusal to allow a removal which resulted in the decision in *Levin v. Hewes,* 118 Md. 624, 86 A. 233.

"628. The said justices of the peace, other than the five justices of the People's Court, when called out of their offices for the purpose of taking acknowledgments and affidavits, may receive such compensation for their services, in addition to the fees prescribed by law, as the party requiring their services may allow them."

The only substantial difference between the powers of justices of the peace in Baltimore, other than justices of the People's Court, and justices of the peace in the counties, other than trial magistrates, is that a city justice may try cases, if he chooses to make the writ returnable to himself, and both parties agree to let him try the case, for which he is paid $10.00 per year, while under the Act of 1939, ch. 720, sec. 93, it is provided that any civil or criminal action instituted before a justice of the peace, other than a trial magistrate, shall be promptly removed by him, with the original papers and copy of the docket entries, to the nearest trial magistrate for trial, for which he shall receive $20.00 per year. He is not authorized nor required to perform a single judicial act, except the issuance of summons on pleas of debt and warrants in criminal actions and to take recognizances.

It is contended that the deprivation of justices of the peace of the right to try and determine criminal and civil actions is so much an abolition of the office as to amount

to a repeal of the various acts providing for the appointment of justices of the peace for the several election districts of the counties or wards of Baltimore City (Constitution, art. IV, sec. 42), without provision for which by statute, there is no authority for appointments at large. *Day v. Sheriff, supra; Humphreys v. Walls, supra.*

None of the old English traditions apply to the office of justice of the peace in this state. Here they are founded on statutes passed in pursuance of the Constitution, which does not indicate what their "jurisdiction, duties and compensation" shall be, but leaves those incidents of the office to the Legislature. If the Legislature cannot prescribe different duties and powers for the various justices, then every justice of the peace everywhere in the state would have, within the limits of his district, ward, county, or city, the same powers. If this be true, then the police justice acts in Baltimore and many of the counties would take away from those justices the exclusive right to hear and determine criminal cases, and the juvenile magistrate's exclusive jurisdiction over children under sixteen would be shared with every justice of the peace in the same jurisdiction, and the purposes of those acts defeated. It would also require us to overrule the decision in *Levin v. Hewes, supra,* which we are not disposed to do.

On the authority of *Levin v. Hewes,* 118 Md. 624, 86 A. 233, the order appealed from should be affirmed.

In No. 6, the petitioner, George B. Woelfel, filed his petition praying a writ of mandamus on the Board of County Commissioners of Anne Arundel County to pay the salary prescribed by law, wherein he alleged his appointment by the Governor as a justice of the peace for the Sixth Election District on April 26th, for the term of two years beginning the first Monday of May, 1939, and his qualification on the latter date; that he was paid the salary of $75.00 for the month of May, 1939, but that ever since the respondent Board of County Commissioners has refused to pay the monthly salary of $75.00,

which it is required by article 2, section 361, of the Code of Public Local Laws to pay. The respondent answered, and, the petitioner demurring, and his demurrer having been overruled, he appeals.

No. 7 is a petition for the same relief, to the same effect, with the same result, against the Mayor, Counselor and Aldermen of Annapolis, to compel the payment since June first of a salary of $50.00 per month, as required by section 361, article 2 of the Code of Public Local Laws. As justice of the peace for Election District No. 6, the petitioner was also a police justice of the City of Annapolis, which was required to pay two-fifths of his $1500.00 salary.

These cases, 6 and 7, adversely to the contentions of the appellees and the decision of the court below, have been recently decided by this Court in *Calvert County v. Monnett,* 164 Md. 101, 164 A. 155.

The appellees here contend, and the court below decided, that the Legislature could reduce the salary of the appellant before the expiration of the term of office for which he had been appointed by the Governor, under the provisions of article XVI, section 2, of the Constitution, the Referendum Amendment, passed by resolution of 1914, ch. 673, ratified at the election held November 2nd, 1915, by which it was provided, by section 2, that: "No law enacted by the General Assembly shall take effect until the first day of June next after the session at which it may be passed, unless it contain a Section declaring such law an emergency law and necessary for the immediate preservation of the public health or safety, * * * provided, however, that no measure creating or abolishing any office, or changing the salary, term or duty of any officer * * * shall be enacted as an emergency law."

In *Calvert County v. Monnett,* 164 Md. 101, 164 A. 155, Charles A. Monnett had been elected by the County Commissioners of Calvert County as county treasurer. After his election, November 4th, 1930, and qualification, December 9th, 1930, the compensation of the treasurer had been reduced by the Act of 1931, chapter 207. At

the hearing on appeal the contention was made that the Act was void because it went into effect from the date of its passage, while article 16, section 2, of the Constitution provided that any law affecting salaries of officers should not take effect until June 1st following its enactment. This court held that article 3, section 35, which said, "* * * nor shall the salary or compensation of any public officer be increased or diminished during his term of office," is still in the Constitution, had not been abrogated, and that the only effect of the Calvert County Act of 1931, ch. 207, was to postpone its effectiveness to June 1st, 1931, instead of the date of its passage, and make it applicable to Monnett's successors.

The effect of our decision in *Calvert County v. Monnett* is that Anne Arundel County will not only be saddled for twenty-three months from June 1st, 1939, with the salaries of three trial magistrates, whose salaries aggregate $7000.00, but twelve justices of the peace, including the appellant, who have been stripped of their power, whose salaries for the same twenty-three months will amount to $11,369.00 to May 1st, 1941. In addition to this the City of Annapolis must provide for the payment to the appellant of twenty-three months salary at $50.00 per month from June 1st, 1939, or $1150.00. It is a queer situation which only the General Assembly could have anticipated and have provided against. The appellant was appointed and qualified for the term of two years before the Act of 1939 became effective. Constitution, article IV, sec. 42. And the Legislature had no power to reduce his compensation; the Legislature created the situation, and this court has no power to change it.

*For the reasons here given the order in No. 5 is affirmed with costs, and the orders in Nos. 6 and 7 reversed with costs.*