# RYAN v. UNITED STATES.

## APPEAL FROM THE COURT OF CLAIMS.

No. 64. Argued October 16, 1922.—Decided November ·13, 1922.

1. Under §§ 2733 and 2737, Rev. Stats., and the Act of March 3, 1881, c. 132, 21 Stat. 429, the Secretary of the Treasury was authorized to appoint inspectors of customs, at New York, at $4.00 per day. P. 91.
2. The Act of December 16, 1902, c. 2, 32 Stat. 753, authorized the Secretary to increase the per diem of such inspectors $1.00 but did not require it; nor did the appropriation acts of June 30, 1906, c. 3912, 34 Stat. 636, and March 4, 1907, c. 2919, id. 1373, make such increase mandatory. P. 92.

56 Ct. Clms. 103, affirmed.

APPEAL from a judgment of the Court of Claims rejecting a claim for additional pay as a customs inspector.

*Mr. William E. Russell*, with whom *Mr. Louis T. Michener* and *Mr. Perry G. Michener* were on the briefs, for appellant.

*Mr. Assistant Attorney General Lovett*, with whom *Mr. Solicitor General Beck* and *Mr. Harvey B. Cox* were on the brief, for the United States.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

Ryan, the claimant and appellant, by his amended petition in the Court of Claims, sought to recover from the United States $3,465, being $1.00 per diem from April 16, 1910, to and including October 10, 1919. He was during that period a customs inspector at New York, and received $4.00 per day. He says that by law he was entitled to $5.00 per day, and he brings suit to recover the difference. The Court of Claims gave judgment for the Government. The question for our decision is what was

Ryan's lawful compensation during this period of nine and a half years.

Ryan entered the customs service as a probationary junior clerk, Class C, in 1899, after passing a civil service examination. He was promoted from one place to another in the service until as the result of a promotion examination he became inspector, Class 2, at $4.00 a day, and executed an oath as such on April 16, 1910. This appointment was made in pursuance of authority granted by the Secretary of the Treasury to the Collector at New York to appoint three inspectors of customs at $4.00 a day, Class 2. By the same authority 22 more inspectors of the same class were appointed before July 1, 1910. On that day, the Collector at New York, with the approval of the Secretary, effected a reorganization by which 74 inspectors were appointed to Class 2, at $4.00 a day—296 to Class 4 at $5.00 per day, and 52 to Class 5, at $6.00 per day. The appointment of the claimant and others in April, 1910, as inspectors of Class 2, $4.00 per day, marked their entrance into the service, and they were not reappointed under the reorganization but remained as inspectors of Class 2 under their original appointments.

Was this appointment of Ryan at $4.00 a day authorized by law? Section 2733, Rev. Stats., provides that each inspector of customs shall receive for every day he shall be actually employed in aid of customs, $3.00. Section 2737 provides that the Secretary of the Treasury may increase the compensation of inspectors of customs in such ports as he may think it advisable so to do, and may designate, by adding to the present compensation of such officers, a sum not exceeding $1.00 a day. By Act of March 3, 1881, c. 132, 21 Stat. 429, the Secretary was given authority to appoint inspectors of customs at a compensation less than $3.00 per day when in his judgment the public service would permit. There is certainly nothing in the foregoing provisions, still in force, which prevented

the Secretary from appointing inspectors in New York at $4.00 a day. By virtue of this authority, before 1902, he had increased the pay of all inspectors at New York to $4.00.

By Act of December 16, 1902, c. 2, 32 Stat. 753, the Secretary was authorized to increase the compensation of inspectors of customs at the port of New York as he might think advisable and proper by adding to their then compensation a sum not exceeding $1.00 per day, such additional compensation to be for work performed at unusual hours for which no compensation was then allowed, and as reimbursement of expenses for meals and transportation while in the performance of official duties. Under the foregoing, in 1903, the Secretary increased the pay of inspectors then in office in New York to $5.00 per day, Class 4. The Act of 1902 is wholly permissive in its language. It does not require an increase of $1.00 a day or any part of it to inspectors in New York. It only authorizes it.

It is contended, however, that the Act of 1902 has been construed by Congress in two deficiency appropriation acts to be mandatory and to require that all inspectors appointed in New York shall receive $5.00 a day. The acts relied on are that of June 30, 1906, c. 3912, 34 Stat. 634, 636, and that of March 4, 1907, c. 2919, 34 Stat. 1371, 1373. In substantially the same language they appropriated money to pay inspectors of the port of New York "the difference between the per diem salary of four dollars paid them during the months of October, November, and December, nineteen hundred and five, and their proper per diem salary for the same period (five dollars per diem), in accordance with the Act of Congress approved December sixteenth, nineteen hundred and two." These deficiency appropriations related to 331 inspectors at New York whose pay had been fixed at $5.00 a day under the Act of 1902, prior to October 1, 1905, and which on that

date was reduced by the Secretary of the Treasury to $4.00. On January 1, 1906, their pay was increased again to $5.00.

It would be straining provisions of a deficiency act applying to special instances to hold that it was intended to change a plainly permissive statute into a mandatory one. The much more natural interpretation of the language used is that Congress thought that the pay of these inspectors which had been increased to $5.00 a day under the Act of 1902 by the Secretary, had thus become fixed by law and so that the Secretary had no power to reduce them. This fully satisfies the words relied on without amending the statute or making it mean what it plainly does not mean.

Counsel for appellant press upon the Court, also, its decision in *Cochnower* v. *United States,* 248 U. S. 405, as a basis for recovery here. In that case, the claimant, a customs inspector in New York, had been, with all his fellows, advanced to $5.00 a day (Class 4), under the Act of 1902. The Secretary had, thereafter, reduced him and his fellows to $4.00 a day (Class 2), and counsel for the Government asserted authority to do this under the Act of March 4, 1909, c. 314, 35 Stat. 1065, by which the Secretary was empowered to "increase and fix the compensation of inspectors of customs, as he may think advisable, not to exceed in any case the rate of six dollars per diem." The Court held that authority to increase did not give authority to decrease, and that as the pay of the inspectors in that case had been fixed at $5.00, it was the legal pay and they could recover the balance due. The Court took the same view which before the Act of 1909 Congress seemed to have taken in the deficiency acts we have just discussed. Neither the language of Congress in the deficiency acts nor the *Cochnower Case* has any application to the one before us, because here the claimant entered the service as a new appointee at $4.00 a day

(Class 2), which, as we have seen, the Secretary had full authority to fix, and his pay was not increased during the period for which he seeks recovery.

This conclusion makes it unnecessary for us to consider any other question in the record.

*Affirmed.*