TUBMAN *v.* BERWAGER, ET AL., COUNTY COMMISSIONERS

[No. 112, October Term, 1947]

*Decided March 19, 1948.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*F. Neal Parke* and *Ralph G. Hoffman* for the appellant.

*Theodore F. Brown* for the appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from an order of the Circuit Court for Carroll County sustaining a demurrer to a petition for mandamus and dismissing the petition. Vincent A. Tubman served as a Trial Magistrate in Carroll County for about 8 years prior to May, 1947, under successive appointments by the governor for two year terms. He

was reappointed by Governor Lane for the term beginning May 5, 1947, and the appointment was duly confirmed by the Senate. His salary during his first two terms was $1,200 a year, during his third term, $1,500 a year, during his fourth term, $1,920 a year. On April 11, 1947, the Board of County Commissioners adopted a resolution reducing the salary of the office to $1,200 a year, beginning May 5, 1947. Tubman duly assumed the office on May 9, 1947, and on June 2, 1947, presented a bill for $160 for his services for the month of May. The appellees declined to pay him more than the $100 a month established by their resolution. Tubman presented a similar bill for his services for the month of June, and thereafter brought this proceeding to test the validity of the attempted reduction.

No constitutional question is presented, since the reduction was not designed to take effect during a term of office. *Woefel v. State,* 177 Md. 494, 9 A. 2d 826; *Levin v. Hewes,* 118 Md. 624, 642, 86 A. 233. Nor is it contended that acceptance of the office or a reduced salary would bar recovery, if the reduction was illegal. *County Com'rs of Anne Arundel County v. Goodman,* 172 Md. 559, 192 A. 325. The decision must turn upon the scope of the authority to fix salaries delegated to the County Commissioners.

Section 100 of art. 52 of the Code, first enacted by ch. 720 of the Acts of 1939, is a comprehensive section establishing the number and salaries of the trial magistrates and the places where they shall sit in the several counties. The sub-section applicable to Carroll County originally provided, and still provides, for two trial magistrates, one of whom, sitting in Manchester, Mt. Airy, Taneytown, Union Bridge and Sykesville once a week, "shall receive an annual salary of $1,200.00". Section 103 of art. 52 provides: "(Minimum salaries only.) All salaries herein provided shall be considered minimum salaries, * * * and may be increased at any time by the County Commissioners from county funds * * *. The annual salaries of trial mag-

istrates *  *  * shall be paid in equal monthly amounts * * *."

Chapter 720 of the Acts of 1939 was enacted pursuant to recommendations made by a "Commission on the Inferior Courts", appointed by Governor O'Conor. In its report dated February 11, 1939, the commission said: "It is provided in the bill that the suggested salaries are minimum amounts, and authority is conferred upon the County Commissioners of the several counties to increase the salaries, from county funds, as the work of the magistrates may increase or as general salary levels may rise or as their own best judgment may dictate." The appellant argues that the use of the words "may be increased" negatives any implication of a power to decrease. But the words quoted must be read in connection with the preceding sentence: "salaries herein provided shall be considered minimum salaries", which obviously refers to the figures set in section 100. We think that authority to increase above the minimum specified in section 100 fairly implies an authority to omit, from time to time, a prior increase. It is not contended that the statute does not authorize a repeated exercise of the power to increase prior to the beginning of each new term. In the absence of restrictive language, each exercise of the power to increase, or not to increase, is limited only by the statutory minimum which is the point of reference. If the appellant's argument were accepted, the effect would be that the present minimum, or point of reference, would be $1,920 a year, and not $1,200 a year as the Statute provides.

It is not without significance that although the minimum salaries of trial magistrates in other counties have frequently been revised upward, by amendments to section 100, (see chapters 359, 477 and 855 of the Acts of 1947, for example), the sub-section relating to Carroll County has never been revised. As a matter of fact, the Legislature passed a bill in 1947, H. B. 497, abolishing the office of the trial magistrate sitting at the five towns above mentioned in Carroll County, and imposing

those duties upon the magistrate sitting at Westminster. The Governor vetoed the bill, on the ground that it was passed as an emergency measure, in violation of section 2, art. XVI of the Constitution. (Acts of 1947, p. 2259). The bill in question fixed the minimum salary of the Magistrate sitting at Westminster at $3,000 in place of the minimum of $2,400 previously provided. In effect, the Legislature valued the services of the other magistrate at only $600.

We have found no case directly in point. The appellant relies strongly upon the case of *Carroll County Com'rs v. Shriver,* 146 Md. 412, 126 A. 71. In that case the Legislature had passed an Act providing for an exemption from taxation of manufacturers' tools and machinery in any county adopting the provisions of the Act by resolution of the County Commissioners. It was held that once the local option had been exercised, the exemption became the law of that county, and could not be repealed except by further legislative action. We think the case is readily distinguishable. The appellant also relies upon *Cochnower v. United States,* 248 U. S. 405, 39 S. Ct. 137, 63 L. Ed. 328, Id., 249 U. S. 588, 39 S. Ct. 387, 63 L. Ed. 790. There an Act of Congress provided that the Secretary of the Treasury might "increase and fix the compensation of inspectors of customs * * *, not to exceed in any case the rate of six dollars per diem." Act March 4, 1909, § 2, 35 Stat. 1065. At the time the Act took effect, Cochnower was receiving $5 per diem, and the Secretary thereafter reduced him to $4 per diem. It was held that the Act did not authorize a reduction below the amount he was receiving when the law took effect, and directed the Court of Claims to enter judgment for the difference. In *Ryan v. United States,* 260 U. S. 90, 43 S. Ct. 34, 67 L. Ed. 147, it was held that the Act did not require Ryan's per diem of $4 to be raised to $5. These cases are likewise distinguishable.

The court below, in a well considered opinion, relied upon the case of *Board of Commissioners of Allen County*

*v. Chapman*, 22 Ind. App. 60, 53 N. E. 187, 189. There an Act of the Legislature fixed the salary of a township assessor at "not less than one thousand dollars nor more than fifteen hundred dollars per annum, which amount is to be determined by the Board of County Commissioners of the county in which said township is situate." Acts 1891, p. 349, c. 142. The Board fixed the salary for one year at $1,300, payable monthly. For each of the ensuing three years, the Board fixed the salary at $1,100. The court said: "The power possessed by the legislature was, within prescribed limits, delegated to the board of commissioners, to determine what compensation should be paid to the appellee. That authority was not exhausted by the first or second exercise of it. It could be exercised at least once a year, as it was exercised by the appellant." The reduction was sustained, the court pointing out that a change in future compensation may be made even during the term of an incumbent, unless restrained by the Constitution. In *Rivers v. Hailey*, 199 Ga. 38, 33 S. E. 2d 310, the Supreme Court of Georgia held that where authority was granted to county commissioners to fix the salary of a deputy marshal at not less than $150 per month, and the Board first increased and subsequently decreased the salary, the reduction was valid since the reduced salary was above the statutory minimum. See also *Buckbee v. Board of Education*, 115 App. Div. 366, 100 N. Y. S. 943, and notes 70 A. L. R. 1050; 145 A. L. R. 412.

The appellant argues that if the Board has the power to reduce a salary below a figure previously set, they could, from improper motives, make it difficult or impossible for an appointee of the Governor, duly confirmed by the Senate, to accept the office. If such an appointee declines the office, the Governor has, of course, power to fill the vacancy forthwith. *Johnson v. Duke*, 180 Md. 434, 436, 24 A. 2d 304. We cannot assume that the local authorities were actuated by any other motive than to fix a salary commensurate with the services to be performed, or that they failed to balance the desirability

of paying adequate salaries, to attract competent officials, against the cost to the taxpayers. If the power is capable of abuse, as contended, the remedy lies with the legislature. Undoubtedly, one of the primary objects in setting up the Trial Magistrate System was to concentrate the trial function in the hands of officers compensated by salaries paid by the county, rather than by fees of the office, which are now payable to the county. As applied to a new term of office, we find nothing in the statute that would compel the conclusion that the County Commissioners cannot reduce salaries paid in a previous term to the statutory minimum fixed by section 100.

*Order affirmed, with costs.*

MARBURY, C. J., and MARKELL, J., dissent.

MARBURY, Chief Judge (dissenting).

The Trial Magistrates' system, as it now exists in the counties of this State, was the result of long continued dissatisfaction with the Justice of the Peace system which had preceded it. Under that system the Governor appointed a number of justices of the peace for each election district in the county. These justices of the peace were paid from costs imposed in the civil and criminal cases that were tried before them. There were two results from this method of compensation which were mainly responsible for the change. One was that the amount a justice could collect during any year was in most instances so small that men of capacity and responsibility were unwilling to accept the position. That resulted in a number of inferior men being appointed, which acted cumulatively to still further decrease the attractiveness of the office, and made it more and more difficult to secure the type of men who would properly administer justice. The other objection was that the fee system of compensation, resulted, sometimes knowingly and sometimes insensibly, in making a magistrate favor the source from which he received most of his compensation. In certain communities there would be a

number of civil collection cases brought by a business house or a lawyer. Fees in these cases were always promptly paid by the plaintiffs when the cases were brought. As a result, such a lawyer or business house was apt to become a favored litigant and it was almost impossible for a defendant to succeed against him or it. And if the police, particularly those enforcing the motor vehicles laws, picked a particular magistrate in the district to present their cases before, it was a very lucrative source of revenue for the magistrate. Even though he honestly tried to hear cases on their merits, he could not help being influenced, and was often influenced to such an extent that a man brought in by the police had a presumption of guilt against him before the trial started. Financial pressure is frequently the strongest kind of coercion.

In order to get rid of these evils, to secure a better class of trial magistrates and to relieve them from the necessity of earning their pay by their decisions, Governor O'Conor's Commission on the Inferior Courts was appointed, headed by former Judge Hammond Urner of this Court. This Commission prepared for the Legislature of 1939, the Trial Magistrate's Act which was eventually passed by Chapter 720 of the Acts of that year, and which is codified as Sections 93 to 114, both inclusive, of Article 52 of the Annotated Code. Under this Act a justice of the peace was to be appointed for every election district in each county of the State, but only certain of these magistrates, varying in number in the different counties, were to be trial magistrates with the power to try cases. The other magistrates were to be only committing magistrates, and their compensation was fixed at the yearly sum of $20, except that in three counties they were to receive $50 a year. The number and salaries of the trial magistrates varied, depending on the size of the county. Thus Baltimore County had 14, Charles County had one, and Carroll County, with which we are concerned in this case, had two. One of the latter was to sit in Westminster and

receive an annual salary of $2,400. The other, called the roving magistrate, was to sit at five separate towns, not less than one day or part of a day each week, and he was to receive a salary of $1,200.

The conditions in each county were so different that it was impossible to have a law fixing the same number of trial magistrates in each county with the same salaries. The Legislature not only recognized this by the differing numbers and amounts it fixed, but it also recognized its own fallibility in these respects, and gave the County Commissioners of each County the right to increase the salaries, not only as to trial magistrates, but as to the committing magistrates. This provision is in Section 103 of Article 52 and reads as follows: "(Minimum Salaries Only.) All salaries herein provided shall be considered minimum salaries, * * * and may be increased at any time by the County Commissioners from county funds; and the County Commissioners are specifically authorized to add to the compensation of such other justices as may act as committing justices for the trial magistrates in proportion to the amount of work such other justices may be called upon from time to time to perform." It will be observed that the authority is to increase or add to the minimum salaries fixed. This is, of course, subject to the constitutional provision contained in Section 35 of Article 3, that the salary or compensation of a public officer may not be increased or diminished during his term. See *County Com'rs of Calvert County v. Monnett,* 164 Md. 101, 164 A. 155, 86 A. L. R. 1258 (*County Treasurer*) *and County Com'rs of Anne Arundel County v. Goodman,* 172 Md. 559, 192 A. 325 (States Attorney). Both of these cases were cases where the County Commissioners attempted to reduce the salary of a County officer during his term, and their actions were held void as against the constitutional prohibition.

The County Commissioners of Carroll County after a previous increase in 1943 had, in 1945 increased the salary of both trial magistrates, making the Westminster

Magistrate's salary $2,820 and making the roving magistrate's salary $1,920. In 1947 it was attempted to have only a single trial magistrate, whose salary should be $3,000. A bill to that effect was passed by the Legislature, but was vetoed by the Governor on the ground that it was an emergency act which made its constitutionality questionable. The Governor meanwhile had nominated the appellant as the roving trial magistrate and his nomination had been confirmed by the Senate. He had been a trial magistrate for a number of terms and had received the last increased salary since 1945. After his confirmation, but before his term commenced, the County Commissioners passed a resolution attempting to reduce the salary of his office to $1,200 in case the bill providing for a single magistrate was not approved, which was the case.

It is not necessary for us to assume that the County Commissioners had any dislike to the appellant, or that their action was personal to him. It could very well happen that if the County Commissioners and the appointing power were politically or factionally on opposite sides, the County Commissioners by decreasing the salary of a magistrate appointed and confirmed could thereby prevent the acceptance of the office and exercise a veto power over the Governor and over the Senate. If the County Commissioners have such a power it is more than probable that it will, at times, be so used. And its mere existence will prevent otherwise capable men from subjecting themselves to such a possibility. It is an unlikely supposition that Judge Urner's committee intended any such consequences, or that the Legislature, while attempting to improve the caliber of magistrates, would permit the County Commissioners, to exercise political control over the appointees by such possible or actual shifting of salaries. It may be assumed that both the Commission and the Legislature intended to make these judicial officers as far removed from personal and political consideration as it was possible to do.

The wording of the act itself lends color to this view. As we have shown, the words used are "may be increased" and "add to". Nowhere does the Legislature give any power to decrease after the salaries have been increased or added to. To find such power we have to read into the statute something that is not there. Authority should not be implied unless there is an inherent necessity for such implication.

It has been suggested that in times when judicial business is considerably increased (for instance, in war years) it is necessary to raise salaries in order to get proper officers to fill the positions, but when this condition ceases, the salaries fixed will be too large for the work to be done. That situation may occur, perhaps has occurred, but the Legislature meets every two years and there should be no difficulty in amending the statute and again fixing a lower minimum salary. The larger salaries paid for a year or two would hardly impoverish any county.

It has also been suggested that such a construction would permit the County Commissioners to fix a minimum salary over and above that established by the Legislature. That may be so, but it is the Legislature itself which permits it. In any event, such a result need cause no disturbance. The County Commissioners who have charge of the county affairs and whose records are frequently judged by the tax rate they fix, are generally more inclined to reduce expenses than to raise them. It need not be supposed that they would be apt to fix too high a minimum, and there is no reason for becoming alarmed about it. If the minimum which they fix is too large, resort can again be had to the Legislature, which as we have just noted meets every two years.

We should not insert something in the statute, contrary to its purpose, and not found in its words in order to change a condition which will not cause Carroll County any serious financial trouble, and which is, at its worst, temporary only. We should not be alarmed by fanciful suggestions or possible evil to come. If there is any

**204**

evil to be feared, it is that we have already suggested, of putting the magistrate under the control of the County Commissioners. If we interpret the act as the Legislature enacted it, namely, to fix minimum salaries and to give the County Commissioners authority only to increase these salaries from time to time, that is exactly what the Commission said was intended by the bill when, in its report to Governor O'Conor, made on February 11, 1939, it said "It is provided in the bill that the suggested salaries are minimum amounts, and authority is conferred upon the County Commissioners of the several Counties to increase the salaries, from County funds, as the work of the magistrates may increase or as general salary levels may rise or as their own best judgment may dictate." There is no suggestion in this statement that the Commissioners are to be allowed to decrease the increased salaries after they have established them.

The order should be reversed and the case remanded for further proceedings under the mandamus statute.

Judge Markell is of the opinion that the words of the statute are ambiguous and require construction, but in other respects concurs in this dissenting opinion as a statement of the reasons why, by the true construction of the statute an increase in salary by the County Commissioners operates as an increase in the statutory minimum. See also *Tumey v. Ohio*, 273 U. S. 510, 47 S. Ct. 437, 71 L. Ed. 749, 50 A. L. R. 1243.