John A. COUGHLIN

v.

S. P. RYDER, Regional Director, Third United States Civil Service Region et al.

Civ. A. No. 33400.

United States District Court
E. D. Pennsylvania.

Oct. 13, 1966.

George E. Goldstein, Philadelphia, Pa., for plaintiff.

Drew J. T. O'Keefe, U. S. Atty., Merna B. Marshall, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## OPINION

JOSEPH S. LORD, III, District Judge.

This is an action brought under the Declaratory Judgments Act, 28 U.S.C. § 2201 et seq., and the Administrative Procedure Act, 5 U.S.C. § 1001 et seq., to challenge the validity of the plaintiff's removal from his Civil Service position as General Investigator in the Immigration and Naturalization Service. Since plaintiff was—after his dismissal —reappointed to a lower-paying position in the Service and has now retired from government employment, the relief requested involves only such additional compensation and other service benefits as he would have obtained and to which he would now be entitled if the administrative action resulting in his initial discharge was objectionable under the statutory standards of judicial review enumerated for us at 5 U.S.C. § 1009. See 5 U.S.C. § 652.

In an earlier version of this same suit, this court, by my late brother, Judge Grim, granted defendant's motion to dismiss on the ground of laches, 227 F.Supp. 790 (E.D.Pa., 1964), but that order was vacated by the Court of Appeals, 341 F.2d 291 (C.A.3, 1965), on the basis that the district court had no jurisdiction since plaintiff failed to join certain indispensable parties. Having joined the proper parties, plaintiff is entitled to have us "decide the case again upon

the merits." Id. at 292. Plaintiff's argument that this decision is a mandate to try the case, precluding reassertion of the motion to dismiss, must be rejected as spurious. The Third Circuit has recently held that where indispensable parties have not been joined, the court is completely without jurisdiction to entertain the action. Provident Tradesmens Bank and Trust Co. v. Lumbermens Mutual Casualty Co. (C.A.3), 365 F.2d 802 (1966). Thus, Judge Grim's decision was a nullity; he lacked power to decide anything, including laches. Hence we must proceed as though the matter is before us *de novo.*

Defendants have moved to dismiss the amended complaint, alleging that "the final decision in the plaintiff's case at the administrative level was made by the Board of Appeals and Review of the Civil Service Commission on June 20, 1961 [and] that this action was not instituted until May 7, 1963, almost two years after the plaintiff had exhausted his administrative remedies and therefore * * * the plaintiff is guilty of laches." It is also asserted that since judicial review here is limited to the question of whether the plaintiff was afforded due process, an inspection of the administrative record leaves no issue of fact to be determined.

It has been urged by plaintiff's counsel that the defense of laches cannot properly be considered by the court for four reasons:

*First,* it is argued that there is an applicable statute of limitations of six years which governs suits against the United States for employes' salaries. Plaintiff's line of reasoning begins with the proposition that 28 U.S.C. § 1346, after its 1964 amendment, gives district courts concurrent jurisdiction with the Court of Claims in suits against the United States for salaries, wherein the amount in controversy is less than $10,-000. 28 U.S.C. § 2501, dealing with procedure in the Court of Claims, provides that:

"Every claim of which the Court of Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."

■ We are unable to discern any Congressional intent that the six-year Court of Claims statute of limitations should govern district court actions. Certainly, § 2501 on its face applies only to suits in the Court of Claims, as does the entirety of Chapter 165 of Title 28 which contains § 2501. Congress, of course, well knew how to provide for statutes of limitations. That it did not do so when § 1346 was amended in 1964 plainly indicates that the six-year limitation in § 2501 was not included in the amendment.

However, even assuming that some sort of procedural parity should obtain between the Court of Claims and district courts when wage claims are at issue, we find no indication that Section 2501 was designed to secure to plaintiffs an inviolable right to delay action for the statutory period. Rather, the Congressional intent was to impose—quite literally—a limitation, to define the outer perimeters of timeliness.

Indeed, the Court of Claims itself has held that laches is still a good defense even where the six-year period has not expired. Alpert v. United States, 161 Ct. Cl. 810 (1963); Dion v. United States, 137 Ct.Cl. 166 (1956); Ryan v. United States, 56 Ct.Cl. 103 (1921), aff'd, 260 U.S. 90, 43 S.Ct. 34, 67 L.Ed. 147 (1922); Chamberlain v. United States, 66 Ct.Cl. 317 (1928), cert. denied, 279 U.S. 845, 49 S.Ct. 342, 73 L.Ed. 990 (1929). *A fortiori,* there has been no decisive statutory preemption of the doctrine of laches with respect to suits for government salaries in a district court. In fact, a lengthy limitation period would be especially inappropriate where, as here, suit in the district court is more in the nature of a judicial review of already completed administrative action than a wholly independent proceeding arising from a hitherto unlitigated cause of action. Plaintiff was actively engaged in pursuing his administrative remedies; it could come as no great surprise to him

to learn that an appeal to the courts from the denial of relief would have to be prosecuted with due dispatch.

Therefore, we decline to apply the statutes urged upon us by plaintiff, even by analogy.

■ *Second*, plaintiff reminds us of the well-settled principle that it is only inexcusable delay which sustains the defense of laches. Plaintiff does not deny that he delayed in bringing suit until almost two years after his appeal to the Civil Service Board of Appeals had been dismissed. While it is true that plaintiff continued to write letters to various authorities, we may infer that he knew his pleas were merely supplicatory rather than part of the formal administrative process. Even the letters ceased after May 31, 1962, and eleven months passed before suit was begun. In any event, mere correspondence will not excuse delay in pursuing legal remedies. Jones v. Summerfield, 105 U.S.App.D.C. 140, 265 F.2d 124 (1959), cert. denied, 361 U.S. 841, 80 S.Ct. 93, 4 L.Ed.2d 80 (1959); Grasse v. Snyder, 89 U.S.App.D.C. 352, 192 F.2d 35 (1951); Chiriaco v. United States, 339 F.2d 588 (C.A.5, 1964).

■ An examination of the administrative record reveals that plaintiff had acquainted himself or had been made acquainted with the remedies available to him. Indeed, as early as March, 20, 1961, in his appeal to the Civil Service Regional Director, plaintiff indicated that he had "been advised by attorney" [sic] as to "proper procedures" to perfect his claim. We cannot conclude under the circumstances that plaintiff was unaware of his judicial remedy, or that if ignorant, he was justified in his delay.

*Third*, emphasizing the equitable origin and nature of the defense of laches, plaintiff argues that defendants were in no material way prejudiced, and that since the parties are not *in pari delicto*, the suit must proceed. We find this contention to be without merit. As the Supreme Court stated in the leading case

in this area (since underscored by numerous decisions):

"When a public official is unlawfully removed from office * * * obvious considerations of public policy make it of first importance that he should promptly take the action requisite to effectively assert his rights, to the end that if his contention be justified the government service may be disturbed as little as possible and that two salaries shall not be paid for a single service.

"Under circumstances which rendered his return to the service impossible, except under the order of a court, the relator did nothing to effectively assert his claim for reinstatement to office for almost two years. Such a long delay must necessarily result in changes in the branch of the service to which he was attached and in such an accumulation of unearned salary that, when unexplained, the manifest inequity which would result from reinstating him, renders the application of the doctrine of laches to his case peculiarly appropriate in the interests of justice and sound public policy."

United States ex rel. Arant v. Lane, 249 U.S. 367, 372, 39 S.Ct. 293, 294, 63 L.Ed. 650 (1919). See also Norris v. United States, 257 U.S. 77, 42 S.Ct. 9, 66 L.Ed. 136 (1921); Jones v. Summerfield, supra; Grasse v. Snyder, supra; Drown v. Higley, 100 U.S.App.D.C. 326, 244 F.2d 774 (D.C.C.A.1957); Chiriaco v. United States, supra.

Plaintiff contends that the government was not prejudiced because, (1) after his dismissal, plaintiff was offered and he accepted a lower-paying position with the Immigration and Naturalization Service; (2) plaintiff retired at the end of 1965; and (3) unlike the officer in the *Arant* case, plaintiff was not a supervisory employe responsible for significant policymaking.

■ While all of these considerations may tend to indicate a lesser degree of prejudice, they surely do not eradicate

it. On the contrary, the government is still being asked to make up the difference between what plaintiff was earning before his dismissal and what he earned after being rehired. The administrative record reveals that during this period another person was appointed to fill plaintiff's vacated position. This factor, coupled with plaintiff's pointed lack of diligence, is fatal to his claim.

██ *Fourth*, plaintiff urges that the need for additional fact-finding requires that we deny the motion to dismiss because the complaint does not show laches on its face. It has long been held that a motion to dismiss under Rule 12 will be sustained where laches can be determined without the necessity for further factual inquiry. Lomax v. United States, 155 F.Supp. 354 (E.D.Pa.1957); Kincheloe v. Farmer, 214 F.2d 604 (C.A. 7, 1954); 2 Moore's Federal Practice ¶ 12.10; cf. Seaboard Fin. Co. v. Martin, 244 F.2d 329 (C.A.5, 1957).

In our view, the administrative record, consisting in part of statements by the plaintiff himself, affords an adequate factual predicate on which to grant the motion even if it were assumed that the complaint itself did not disclose unreasonable delay amounting to laches. We have been by no means content to rely blindly on the *Arant* case, nor do we interpret that opinion as requiring dismissal merely because of a two year delay. Rather, on a careful analysis of the underlying factual situation as revealed in the undisputed portions of the record, we have concluded that the motion to dismiss must be granted because of plaintiff's delay in pressing suit.

What we have said renders unnecessary a decision on the merits of plaintiff's allegations that he was denied due process.

### ORDER

And now, October 13, 1966, it is ordered that the complaint be and it hereby is dismissed.