Fred E. BASKIN, Jr., et al.,
Plaintiffs,

v.

TENNESSEE VALLEY AUTHORITY,
Defendant.

No. 74–166–NA–CV.

United States District Court,
M. D. Tennessee,
Nashville Division.

Sept. 4, 1974.

Stanley H. Sidicane, Nashville, Tenn., for plaintiffs.

Robert H. Marquis, Gen. Counsel, Beauchamp E. Brogan, Associate Gen. Counsel, Chas. A. Wagner, Atty., Tennessee Valley Authority, Knoxville, Tenn., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

MORTON, District Judge.

This action was filed on April 12, 1974, by 43 named plaintiffs, on behalf of themselves and others similarly situated, who were fired from their jobs at the Tennessee Valley Authority's (TVA) Cumberland Steam Plant in November and December of 1971, because of a work stoppage which occurred on October 21, 1971. The complaint was later

amended to add 22 additional plaintiffs. The essence of plaintiffs' claim is that TVA's action in terminating them because of their participation in the work stoppage was arbitrary, capricious, and an abuse of discretion. Plaintiffs also seek to set aside the findings of a joint committee, established in accordance with the controlling labor agreement to investigate the work stoppage, as well as the action of TVA based on such findings, and to have plaintiffs reinstated to their former jobs with back pay and benefits as of their last pay period in 1971. The case is before the Court on TVA's motion to dismiss or for summary judgment. TVA contends that (1) plaintiffs' delay of over 27 months in bringing this action constitutes laches which bars the suit; (2) the veteran preference eligible plaintiffs who failed to exhaust their administrative remedies cannot invoke the jurisdiction of this Court; and (3) the nonpreference eligible plaintiffs were properly discharged and the Court cannot review the merits of their termination.

It appears to the Court from the pleadings, affidavits, briefs and arguments of counsel that there is no genuine issue as to any material fact and that TVA is accordingly entitled to judgment as a matter of law, in accordance with the findings and conclusions set forth below.

## Findings of Fact

1. On October 21, 1971, the electrical workers at TVA's Cumberland Steam Plant left their assigned places of work in violation of the terms of the General Agreement between TVA and the Tennessee Valley Trades and Labor Council (Council). The Council is the official negotiating representative for all TVA trades and labor employees and is comprised of 16 unions, including the International Brotherhood of Electrical Workers, which is, and was at the time of the work stoppage in question, the accredited representative of plaintiffs. The General Agreement and the Supple-

mentary Schedules, which are a part thereof, governed all phases of plaintiffs' employment with TVA.

2. Article II-3 of the General Agreement provides that "The Council and its member organizations will not permit their members to engage in work stoppages . . . ." The procedure for handling work stoppages in violation of the General Agreement is set forth in Supplementary Schedule H–XXIII, which provides in pertinent part:

> H–XXIII. *Employees Leaving Work in Violation of Article II of General Agreement*
>
> . . . TVA and the Council have considered the problems occasionally caused by groups of men leaving work in violation of Article II of the General Agreement. *Such incidents are unjustified because every problem can be handled under that agreement.* Both parties are expected to abide by it and to correct any mistakes under it *as soon as discovered.*
>
> TVA and the Council will handle *jointly* any incidents of this kind. . . . The Council and TVA each will appoint members to serve on a joint committee. . . .
>
> The committee will attempt to (1) determine the cause of the action, (2) determine who was primarily responsible for the action, (3) determine whether and under what condition the employees may return to work, (4) determine what statement if any of the action shall be placed in the employees' personal history record, and (5) decide on appropriate action against individuals found to have participated in instigating the action or who failed in their responsibility to attempt to prevent the action.
>
> *The decision of the joint committee is final.*[1]

3. Following the work stoppage on October 21, 1971, a joint committee comprised of representatives appointed by both TVA and the Council was formed,

---

1. Emphasis added herein unless otherwise noted.

in accordance with the procedures set out above, to investigate the incident and decide what course of action should be taken. The committee personally interviewed 325 men—all those who were involved, or suspected of being involved, in the work stoppage who made themselves available for interviews.

4. After its investigation, the committee, on December 7, 1971, filed its report in which it concluded that 151 electrical workers, which includes plaintiffs, should be terminated because of their involvement in the illegal work stoppage. Such report included all determinations required under the General Agreement and was in full accord with Supplementary Schedule H–XXIII. Under the terms of the General Agreement, the decision of the joint committee was final and thus binding on both TVA and the Council including the union representing plaintiffs. Accordingly, all 151 electrical workers were terminated, effective in either November or December 1971, depending upon their classification.

5. Twenty-six (26) of the electricians were veterans entitled to the benefits of the Veterans' Preference Act (5 U.S.C. §§ 7511, 7512 (1970)), and they were terminated pursuant to the provisions of that act. All other electricians (125) were terminated in accordance with the terms of the General Agreement. It is undisputed that the procedures applied in the termination of each class of employees were as follows:

*Veterans.* The Veterans' Preference Act was applied to all 26 of the veterans who had completed one year of current continuous service with TVA. Such preference eligible veterans were terminated pursuant to the provisions of 5 C. F.R. part 752, which sets forth the procedures for terminating them under the Veterans' Preference Act. These veterans also had the right to appeal their termination to the United States Civil Service Commission (5 C.F.R. part 772). Only 14 of the 26 veteran preference eligibles exercised their appeal rights. Of the 14, only 10 exhausted their administrative appeal rights by appealing to the Board of Appeals and Review, which ordered the 10 reinstated because of certain procedural irregularities. The 4 others failed to appeal to the Board, and their termination thus became final in December 1971. The remaining 12 preference eligibles, all of whom had the right to appeal their termination to the United States Civil Service Commission pursuant to 5 C.F.R. part 772, did not exhaust or even exercise their administrative remedies, and their terminations became final in December 1971 after the running of the time for an appeal. None of the 10 veterans who appealed their terminations to the Board of Appeals and Review are listed as plaintiffs in this action.

The determination by the commission with respect to the 10 veterans who exhausted their administrative remedies, that TVA had failed to comply with all procedural requirements in terminating them, has no bearing on the question of whether the other veterans can now invoke the jurisdiction of the Court. Their voluntary failure to further exhaust their appeal rights bars them from raising any issue with respect to their termination.

*Nonpreference Eligibles.* The remaining plaintiffs (nonveterans, and veterans who had not completed one year of current continuous TVA service) were terminated in accordance with the terms of the General Agreement between TVA and the Council, which sets forth the procedure for terminating nonpreference eligible employees. Supplementary Schedule H–VII.A provides:

A. Termination or Demotion for Cause

An hourly employee whose termination or demotion is proposed is removed from work and pay status by issuance of form 77. The reasons for the proposed termination or demotion and the analysis of work performance are stated on the form and shall be discussed with the employee by his foreman. If the employee so requests, completion of the proposed action is

delayed for 48 hours to permit him to give notice of appeal. If the employee does not appeal within 10 days, the action is final.

This procedure was fully complied with by TVA in implementing the termination of the nonpreference eligible plaintiffs. These employees had no administrative appeal rights, and their terminations became final on November 16, 1971, in accordance with the terms of the General Agreement.

6. The plaintiffs' delay of over 27 months in bringing this action seeking reinstatement and retroactive pay prejudiced TVA. Plaintiffs seek reinstatement and back pay for over 27 months on behalf of 141 electrical workers, who were making from $6 to $7 an hour when terminated. As a result of the work stoppage and subsequent termination of plaintiffs, TVA hired other workers to replace them to do the work plaintiffs would have performed. Plaintiffs' claim, if allowed, could result in duplicate salaries and back pay from November or December of 1971 and would result in back pay alone of several million dollars.

7. The record fails to reveal any action on the part of the joint committee which was arbitrary or capricious.

8. TVA's action in terminating plaintiffs in accordance with the decision of the joint committee, which decision was binding on both plaintiffs and TVA, was not arbitrary, capricious, or an abuse of discretion.

### Conclusions of Law
### Laches

█ 1. Plaintiffs' delay of over 27 months in filing this action, which resulted in substantial prejudice to TVA, constitutes laches which bars the action. Arant v. Lane, 249 U.S. 367, 39 S.Ct. 293, 63 L.Ed. 650 (1919). In the leading case of Arant v. Lane, *supra*, the Supreme Court held that a supervisor of a national park who waited 20 months after being discharged by the Secretary of the Interior before filing an action in court was barred by laches, saying:

When a public official is unlawfully removed from office, whether from disregard of the law by his superior or from mistake as to the facts of his case, obvious considerations of public policy make *it of first importance that he should promptly take the action requisite to effectively assert his rights,* to the end that if his contention be justified the government service may be disturbed as little as possible *and that two salaries shall not be paid for a single service.*

Under circumstances which rendered his return to the service impossible, except under the order of a court, the relator did nothing to effectively assert his claim for reinstatement to office for almost two years. Such a long delay must necessarily result in changes in the branch of the service to which he was attached and *in such an accumulation of unearned salary* that, when unexplained, the manifest inequity which would result from reinstating him *renders the application of the doctrine of laches to his case peculiarly appropriate in the interests of justice and sound public policy* [at 372, 39 S.Ct. at 294].

In addition to the *Lane* case, delays by discharged federal employees in bringing suit were held to constitute laches and a bar to the actions in the following cases: Norris v. United States, 257 U.S. 77, 42 S.Ct. 9, 66 L.Ed. 136 (1921) (11 months' delay); Nicholas v. United States, 257 U.S. 71, 42 S.Ct. 7, 66 L.Ed. 133 (1921) (3 years' delay); Grasse v. Snyder, 89 U.S.App.D.C. 352, 192 F.2d 35 (1951) (16 months' delay); Caswell v. Morgenthau, 69 App.D.C. 15, 98 F.2d 296, cert. denied, 305 U.S. 596, 59 S.Ct. 81, 83 L.Ed. 378 (1938) (18 months' delay); Haas v. Overholser, 96 U.S.App. D.C. 22, 223 F.2d 314 (1955) (24 months' delay); Chiriaco v. United States, 235 F.Supp. 850 (N.D.Ala.1963), aff'd, 339 F.2d 588 (5th Cir. 1964) (24 months' delay); Drown v. Higley, 100 U.S.App.D.C. 326, 244 F.2d 774 (1957)

(27 months' delay); Brown v. United States, 418 F.2d 442 (5th Cir. 1969) (28 months' delay); United States ex rel. Cromwell v. Doyle, 69 App.D.C. 215, 99 F.2d 448 (1938), cert. denied, 306 U.S. 640, 59 S.Ct. 488, 83 L.Ed. 1041 (1939) (30 months' delay); Davis v. Tennessee Valley Authority, 214 F.Supp. 229 (N. D.Ala.1962), aff'd, 313 F.2d 959 (5th Cir.), cert. denied, 375 U.S. 818, 84 S.Ct. 53, 11 L.Ed.2d 52 (1963) (20 months' delay before filing suit in court of claims, and 11 months' delay before filing suit in district court); Coughlin v. Ryder, 260 F.Supp. 256 (E.D.Pa.1966) (approximately 2 years' delay).

■■ Plaintiffs' assertion that they were ignorant of their legal right to maintain an action in court for reinstatement is an insufficient defense to the charge of laches. See Marrero Morales v. Bull Steamship Co., 279 F.2d 299, 301 (1st Cir. 1960); Morales v. Moore-McCormack Lines, 208 F.2d 218, 221 (5th Cir. 1953). Plaintiffs do not contend that they were not aware of the facts allegedly giving rise to this action, but merely that they were not aware that they were legally entitled to maintain an action in court. Plaintiffs allege that their termination notice advising that "The decision of the joint committee is final," misled plaintiffs into believing that they had no right to judicial review of their terminations. The statement in the termination notice was correct. The General Agreement specifically provides that the decision of the joint committee is final. Where, as here, the facts are known to plaintiffs, ignorance of the law and consequent legal rights applicable thereto does not excuse plaintiffs' delay. Marrero Morales v. Bull Steamship Co., *supra*; Morales v. Moore-McCormack Lines, *supra*; Ramos v. Cont. Ins. Co., 493 F.2d 329, 333 (1st Cir. 1974). See also Richardson v. Hampton, 345 F.Supp. 600, 607 (D.D.C. 1972). One of the plaintiffs filed an affidavit to the effect that legal counsel had advised him that he could not maintain an action, but on what grounds is not stated. In any event, faulty advice

of counsel is also no defense against the charges of laches. Landell v. Northern Pac. Ry., 122 F.Supp. 253, 258 (D.D.C. 1954), aff'd, 96 U.S.App.D.C. 24, 223 F. 2d 316 (1955), cert. denied, 350 U.S. 844, 76 S.Ct. 85, 100 L.Ed. 752 (1955). Plaintiffs have not cited, nor is this Court aware of, a single case supporting plaintiffs' position.

■ 2. A motion to dismiss or for summary judgment is the proper procedure for challenging plaintiffs' right to maintain the action when the defense of laches is raised. Arant v. Lane, 249 U. S. 367, 39 S.Ct. 293, 63 L.Ed. 650 (1919) (demurrer); Davis v. Tennessee Valley Authority, 214 F.Supp. 229 (N.D.Ala. 1962), aff'd, 313 F.2d 959 (5th Cir.), cert. denied, 375 U.S. 818, 84 S.Ct. 53, 11 L.Ed.2d 52 (1963) (summary judgment); Corrington v. Webb, 375 F.2d 298 (9th Cir. 1967), cert. denied, 389 U. S. 930, 88 S.Ct. 292, 19 L.Ed.2d 282 (1967) (summary judgment); Caswell v. Morgenthau, 69 App.D.C. 15, 98 F.2d 296, cert. denied, 305 U.S. 596, 59 S.Ct. 81, 83 L.Ed. 378 (1938) (demurrer); United States ex rel. Cromwell v. Doyle, 69 App.D.C. 215, 99 F.2d 448 (1938), cert. denied, 306 U.S. 640, 59 S.Ct. 488, 83 L.Ed. 1041 (1939) (demurrer); Grasse v. Snyder, 89 U.S.App.D.C. 352, 192 F.2d 35 (1951) (summary judgment); Evans v. Leedom, 105 U.S.App. D.C. 141, 265 F.2d 125 (1959), cert. denied, 361 U.S. 935, 80 S.Ct. 377, 4 L.Ed.2d 356 (1960) (summary judgment); O'Brien v. Rogers, 106 U.S. App.D.C. 36, 269 F.2d 227 (1959) (summary judgment); Carney v. Gates, 109 U.S.App.D.C. 377, 288 F.2d 161 (1961) (summary judgment); Haas v. Overholser, 96 U.S.App.D.C. 22, 223 F.2d 314 (1955) (motion to dismiss); Russell v. Thomas, 129 F.Supp. 605 (S. D.Cal.1955) (motion to dismiss); Coughlin v. Ryder, 260 F.Supp. 256 (E. D.Pa.1966) (motion to dismiss).

3. Although the Court is of the opinion that plaintiffs' laches in bringing this action constitutes a complete bar to its maintenance, the other issues raised

by the parties are disposed of as follows:

*Exhaustion—Preference Eligible Plaintiffs*

■ 4. The 16 veteran preference eligible plaintiffs who had the right to appeal their terminations to the Civil Service Commission pursuant to 5 C.F.R. part 772, but chose not to do so, failed to exhaust their administrative remedies and cannot now maintain this action regarding their termination. Webb v. Tennessee Valley Authority, Civil No. 8103 (E.D.Tenn., Mar. 5, 1973); Beale v. Blount, 461 F.2d 1133 (5th Cir. 1972); Chiriaco v. United States, 235 F.Supp. 850, 854 (N.D.Ala. 1963), aff'd, 339 F.2d 588 (5th Cir. 1964); Acfalle v. United States, 438 F.2d 913 (9th Cir.), cert. denied, 404 U.S. 857, 92 S.Ct. 104, 30 L.Ed.2d 99 (1971); Hills v. Eisenhart, 256 F.2d 609, 611 (9th Cir.), cert. denied, 358 U.S. 832, 79 S.Ct. 53, 3 L.Ed.2d 70 (1958); Haas v. Overholser, 96 U.S.App.D.C. 22, 223 F.2d 314 (1955); Johnson v. Nelson, 86 U.S.App.D.C. 98, 180 F.2d 386, cert. denied, 339 U.S. 957, 70 S.Ct. 980, 94 L.Ed. 1368, rehearing denied, 339 U.S. 991, 70 S.Ct. 1022, 94 L.Ed. 1392 (1950); Krennrich v. United States, 340 F.2d 653, 654, 169 Ct.Cl. 6, cert. denied, 382 U.S. 870, 86 S.Ct. 147, 15 L.Ed.2d 109 (1965). See also Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938). This principle is aptly stated in Chiriaco v. United States, *supra,* involving a discharged TVA employee:

> Where a complaining federal employee has failed to exhaust his administrative remedies the courts will not review his complaints [235 F.Supp. at 854].

In Hills v. Eisenhart, *supra,* the court stated:

> It did not appear from the complaint that plaintiffs had appealed to the Commission or had invoked any other administrative remedy. Much less did it appear that they had exhausted their administrative remedy or remedies. Instead, it appeared that they

had not done so. Hence the District Court had no jurisdiction of the action [256 F.2d at 611].

As also said in United States v. Bradt, 280 F.Supp. 858, 859 (C.D.Cal.1968), the exhaustion of such an administrative remedy is "more than a condition precedent to bringing action; it goes to the very jurisdiction of the court."

■ 5. That the Civil Service Commission ordered the preference eligibles who appealed their terminations reinstated is of no benefit to the 16 preference eligible plaintiffs who failed to appeal to the Commission. Since these 16 plaintiffs failed to exhaust their administrative remedies, this Court is without jurisdiction over their claims. Hills v. Eisenhart, 256 F.2d 609, 611 (9th Cir.), cert. denied, 358 U.S. 832, 79 S.Ct. 53, 3 L.Ed.2d 70 (1958).

■ 6. The veteran preference eligible plaintiffs, having thus waived their appeal rights, have no claim for reinstatement, damages or other relief in court. McDougall v. United States, 149 F.Supp. 651, 653, 138 Ct.Cl. 90 (1957); Hutton v. United States, 154 Ct.Cl. 34, 39 (1961); Gernand v. United States, 174 Ct.Cl. 936, 939–940 (1966).

*Compliance With General Agreement— Nonpreference Eligible Plaintiffs*

■ 7. None of the nonveteran plaintiffs have termination rights under the Veterans' Preference Act (5 U.S.C. § 2108 (1970)). Neither do the termination procedures of the Veterans' Preference Act apply to veteran plaintiffs who have not completed one year of current continuous TVA employment. 5 U.S.C. § 7511 (1970); Kirkpatrick v. Gray, 91 U.S.App.D.C. 138, 198 F.2d 533, cert. denied, 344 U.S. 880, 73 S.Ct. 178, 97 L.Ed. 682 (1952); McMahon v. Young, 177 F.Supp. 75 (D.D.C.1957); Grief v. Tennessee Valley Authority, Civil No. 2118 (W.D.Ky., Sept. 25, 1971). This principle is specifically recognized by plaintiffs (complaint, p. 3, ¶ 9). Accordingly, the termination rights of all nonpreference eligible plaintiffs are the procedures set out in Supplementary Schedule H–VII of the General Agree-

ment. The uncontradicted affidavit of James D. Pullin, Chief, Employee Relations Branch of TVA's Division of Personnel, affirmatively shows that the procedures set forth in the General Agreement were fully complied with by TVA in terminating the nonpreference eligible plaintiffs. The fact that the Civil Service Commission ordered the veterans who appealed their terminations reinstated is of no benefit to the nonpreference eligible plaintiffs, since their termination rights are different and flow from different sources and since they clearly have no preference rights under the Veterans' Preference Act.

■■■■ 8. Since TVA complied fully with the procedures set forth in the General Agreement in terminating the nonpreference eligible plaintiffs, they are not entitled to any relief from this Court. For it is well established that since the appointment and removal of government employees are matters of discretion left to the Executive Branch, the courts will not review the merits of the administrative decision to terminate them. Keim v. United States, 177 U.S. 290, 20 S.Ct. 574, 44 L.Ed. 774 (1900); Fass v. Ruegg, 379 F.2d 216 (6th Cir. 1967); Baum v. Zuckert, 342 F.2d 145 (6th Cir. 1965); Dozier v. United States, 473 F.2d 866 (5th Cir. 1973); Chiriaco v. United States, 339 F.2d 588 (5th Cir. 1964); Ellithorpe v. Tennessee Valley Authority, Civil No. 6729 (M.D.Tenn., May 23, 1973). The scope of judicial review of dismissal from federal employment is limited to a determination of whether required procedural steps have been substantially complied with. As stated by the Sixth Circuit in Baum v. Zuckert, 342 F.2d 145 (6th Cir. 1965):

> The judicial function is to determine whether there has been substantial compliance with applicable procedures and statutes, and not to review the administrative determination as to the wisdom or good judgment of the agency in exercising discretion. . . . The courts will not examine into the merits of the dismissal [p. 147].

In Evans v. Morrison, 372 F.Supp. 330 (E.D.Tenn., 1972), involving a suit by a terminated TVA employee, the court held:

> This Court in reviewing the plaintiff's claim is limited to ascertaining whether there had been substantial compliance to the applicable procedure set forth in the General Agreement between T.V.A. and the Tennessee Valley Trades and Labor Council [Memorandum Opinion, p. 3].

Since there is no claim that the termination procedures set forth in the General Agreement were not substantially complied with in effecting these plaintiffs' terminations, there is no issue capable of being reviewed by this Court.

*The Findings of the Joint Committee and the Action of TVA*

■■■■ 9. The findings of the joint committee, and the action of TVA based on such findings, were not arbitrary and capricious. To be classified as such, they must have no rational basis. Ashland Oil & Ref. Co. v. Federal Power Comm'n, 421 F.2d 17, 23 (6th Cir. 1970); Carlisle Paper Box Co. v. N.L.R.B., 398 F.2d 1, 6 (3rd Cir. 1968). Bicknell v. United States, 422 F.2d 1055 (5th Cir. 1970). The uncontradicted affidavit of James D. Pullin, which effectively pierces the allegations in plaintiffs' complaint (Keller v. Dravo Corp., 441 F.2d 1239, 1245 (5th Cir. 1971), cert. denied, 404 U.S. 1017, 92 S.Ct. 679, 30 L.Ed.2d 665 (1972); Williams v. W. R. Grace & Co., Davidson Chem. Div., 247 F.Supp. 433 (E.D.Tenn.1965); Gillmore v. Proctor & Gamble Co., 417 F.2d 615 (6th Cir. 1969)), shows that the findings of the joint committee and the action of TVA based thereon were not arbitrary and capricious. Moreover, the general agreement specifically provides that the decision of the joint committee is final, and such decision is binding on both plaintiffs and TVA.

TVA's motion for summary judgment is granted. A judgment dismissing this action with full prejudice will be entered in accordance with these findings of fact and conclusions of law.

Approved for entry.