Ewing **CONRAD, James B. Sturdavant, Jr., on behalf of themselves and all others similarly situated; and the National Post Office Mail Handlers, Local No. 305, Liuna, AFL–CIO, Plaintiffs,**

v.

**UNITED STATES POSTAL SERVICE, William Bolger, Postmaster General; Donald W. Meyers, District Manager, Carolina District; Robert L. Hodges, Sectional Center Postmaster, Greensboro, North Carolina; Nicholas A. Carr, Bulk Mail Center Manager, Greensboro, North Carolina, Defendants.**

No. C–79–382–G.

United States District Court, M. D. North Carolina, Greensboro Division.

July 2, 1980.

William G. Pfefferkorn, Jim D. Cooley, J. Wilson Parker, Robert M. Elliot of Pfefferkorn & Cooley, Winston-Salem, N. C., for plaintiffs.

H. M. Michaux, Jr., U. S. Atty., Greensboro, N. C., John C. Oldenburg, U. S. Postal Service, Memphis, Tenn., for defendants.

## MEMORANDUM OPINION

HIRAM H. WARD, District Judge.

This matter came before the Court on November 28, 1979, for a hearing concerning plaintiffs' Motion for Preliminary Injunction, Rule 65, Fed.R.Civ.P., and defendants' Motion to Dismiss, Rule 12(b)(1) & (6), Fed.R.Civ.P. At the hearing, plaintiffs' counsel indicated that plaintiffs did not wish to pursue their preliminary injunction motion at that time. Therefore, the Court only heard arguments concerning the motion to dismiss. Having thoroughly·considered the pleadings, briefs, and arguments of counsel, the Court has decided to grant that motion.

The individual plaintiffs, Ewing M. Conrad and James B. Sturdavant, Jr., are disabled veterans. 5 U.S.C. § 2108(2). As disabled veterans, they are classified as preference eligibles by 5 U.S.C. §·2108 (3)(C). The plaintiff National Post Office Mail Handlers, Local 305 (Local 305), represents certain employees of the United States Postal Service (Postal Service), including Conrad and Sturdavant, in four states and the District of Columbia. Those three plaintiffs[1] have sued the Postal Service and several of its officials. They assert that the Court has jurisdiction pursuant to 39 U.S.C. § 409 and 28 U.S.C. § 1331.

Conrad was employed by the Postal Service until he underwent knee surgery for a service-related injury. His surgery required a year-long recovery period after which he attempted to return to work, possibly to a physically less-demanding position. The Postal Service refused to allow him to return and finally discharged him. Sturdavant is currently employed by the Postal Service. However, the Postal Service suspended him for seven days for excessive absences allegedly due to extensive treatment for service-related knee injuries. Conrad and Sturdavant contend that the Postal Service is required to follow a policy which would allow unlimited leaves of absence to disabled veterans who require treatment of service-related injuries. They complain that the Postal Service has violated that policy by disciplining them. Local 305 complains that other of its members have received or will receive dismissals or suspensions because of absences for necessary treatment.[2]

Effective July 1971, Congress created the new Postal Service, an independent establishment of the executive branch. 39 U.S.C. § 201. As a result, postal employees became members of the postal career service, a part of the civil service. 39 U.S.C. § 1001(b). They are no longer members of the competitive civil service to which most federal employees belong. According to 39 U.S.C. § 1003(b), the Postal Service is to "follow an employment policy designed, without compromising the policy of [39 U.S.C. § 101(a)], to extend opportunity to the disadvantaged and the handicapped." Section 101(a) basically defines the Postal Service's function and directs that "[i]t shall provide prompt, reliable, and efficient services to patrons in all areas and shall render postal services to all communities." Before establishment of the new Postal Service, preference eligibles such as Conrad and Sturdavant, as members of the competitive civil service, were entitled to certain preferences in hiring, retention and reinstatement. 5 U.S.C. §§ 3309–18. Although postal employees are no longer members of the competitive civil service, the preference

---

1. Plaintiffs purport to represent a class composed of Postal Service employees who are disabled American Veterans in need of medical treatment who are now employed, or who were employed at any time from May, 1976, to the present by the defendant, United States Postal Service, at the Greensboro General Mail Facility and Bulk Mail Center, and who have been, continue to be, or might hereafter be, adversely affected by the practices complained of . . . . Complaint ¶ 10 (May 24, 1979). However, plaintiffs have not moved for a determination as to whether the case is maintainable as a class action. Rule 23(c)(1), Fed.R.Civ.P.; Local Rule 17(b)(3).

2. The question of the local's standing to sue is not addressed here. The claims of Conrad and Sturdavant present all of the legal issues which are necessary to a ruling on the defendants' motion to dismiss. Separate consideration of the local's claim is unnecessary.

provisions continue to apply to them. 39 U.S.C. § 1005(a)(2). One of those provisions directs the waiver of physical requirements for a position which a preference eligible seeks if he is physically able to perform the duties of the position. 5 U.S.C. § 3312.[3] Plaintiffs contend that failure to grant disabled veterans unlimited leave for medical treatment of service-related injuries violates the Fifth Amendment, the 39 U.S.C. § 1003(b) policy favoring the handicapped, and the 5 U.S.C. § 3312 waiver of physical requirements provision, as well as a 1930 executive order and a Postal Service regulation governing medical leave. The Court will discuss the bases of plaintiffs' claims in that order.

*Fifth Amendment*

■ Plaintiffs' pleadings are somewhat unclear as to whether they claim the Postal Service has violated their substantive due process rights, procedural due process rights or both. Their complaint appears to refer to substantive rights by alleging that the existing Postal Service medical leave policy for disabled veterans violates the Fifth Amendment. Complaint ¶¶ 18 & 20 (May 24, 1979). Plaintiffs' preliminary injunction brief makes the argument that suspension or termination of disabled veterans for medical absences is arbitrary and capricious and violates substantive due process. Brief in Support of Plaintiffs' Motion for Prelimi-

nary Injunction p. 5 (May 24, 1979). However, in their brief in response to defendants' motion, plaintiffs argue that postal employees, such as Sturdavant, who are suspended for fourteen days or less are deprived of a property interest without procedural due process if they have no right to an administrative hearing in review of their suspensions. Response to Motion to Dismiss and Supporting Memorandum of Law pp. 4–5 (October 1, 1979). Because a complaint may not be dismissed for failure to state a claim for relief "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957), the Court will consider both the substantive and procedural due process issues.

■ Plaintiffs apparently contend they have stated a cause of action for violation of their substantive due process rights under cases such as *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) and *Davis v. Passman*, 442 U.S. 288, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). Their allegations, however, do not establish such a Fifth Amendment deprivation. The Postal Service has a legitimate interest in the efficiency of its operations. 39 U.S.C. § 101. Mandatory attendance

---

**3.** Section 3312 provides in full:

(a) In determining qualifications of a preference eligible for examination for, appointment in, or reinstatement in the competitive service, the Office of Personnel Management or other examining agency shall waive—

(1) requirements as to age, height, and weight, unless the requirement is essential to the performance of the duties of the position; and

(2) physical requirements if, in the opinion of the Office or other examining agency, after considering the recommendation of an accredited physician, the preference eligible is physically able to perform efficiently the duties of the position.

(b) If an examining agency determines that, on the basis of evidence before it, a preference eligible under section 2108(3)(C) of this title who has a compensable service-connected disability of 30 percent or more is not able to fulfill the physical requirements of the position, the examining agency shall

notify the Office of the determination and, at the same time, the examining agency shall notify the preference eligible of the reasons for the determination and of the right to respond, within 15 days of the date of the notification, to the Office. The Office shall require a demonstration by the appointing authority that the notification was timely sent to the preference eligible's last known address and shall, before the selection of any other person for the position, make a final determination on the physical ability of the preference eligible to perform the duties of the position, taking into account any additional information provided in any such response. When the Office has completed its review of the proposed disqualification on the basis of physical disability, it shall send its findings to the appointing authority and the preference eligible. The appointing authority shall comply with the findings of the Office. The functions of the Office under this subsection may not be delegated.

standards reasonably serve that interest; therefore, discipline imposed for failure to meet those standards is not arbitrary and capricious. Plaintiffs are not members of a suspect class, nor have they been deprived of a fundamental right. Thus, as a matter of law, the actions taken against them were not constitutionally impermissible.

■ Plaintiffs' contention concerning procedural due process applies only to disabled veterans in the situation in which Sturdavant finds himself. Article VII of the National Agreement between the Postal Service and the National Post Office Mailhandlers Union states that "[n]o employee may be disciplined or discharged except for just cause . . . ." Affidavit of Ross Garulski, Exhibit PS–1 (August 9, 1979) (National Agreement). This provision gives covered postal employees a protectable property interest in their jobs. *Arnett v. Kennedy*, 416 U.S. 134, 151–52, 94 S.Ct. 1633, 1642–43, 40 L.Ed.2d 15, 31–32 (1974); *Board of Regents v. Roth*, 408 U.S. 564, 577–79, 92 S.Ct. 2701, 2709–10, 33 L.Ed.2d 548, 560–61 (1972). Plaintiffs argue, therefore, that preference eligibles who are suspended for fourteen days or less are deprived of procedural due process if, as defendants contend, their only recourse is to pursue the grievance-arbitration procedure of the applicable collective bargaining agreement.

When Congress created the new Postal Service, by adopting the Postal Reorganization Act,[4] it basically provided for two types of procedures for resolution of disputes over disciplinary actions against postal employees. *Abbruzzese v. Berzak*, 601 F.2d 107, 108–09 & nn. 3 & 4 (3d Cir. 1979). One procedure involves an appeal to the Merit Systems Protection Board, 5 U.S.C. § 7701 *et seq.*; the other involves the filing of a grievance pursuant to the grievance-arbitration procedure of an applicable collective bargaining agreement, 39 U.S.C. § 1206(b).

Under 39 U.S.C. § 1005(a)(2), the provisions of Title 5 relating to preference eligibles are made applicable to employees of the Postal Service as if they were still part of the competitive service. Therefore, 5 U.S.C. § 7511 *et seq.*, governing adverse actions, applies to preference eligibles such as Conrad who are discharged. Under those provisions an affected employee is entitled to certain procedural protections and adverse action may be taken against him only under a "for cause" standard. 5 U.S.C. § 7513. An employee against whom such an action is taken may appeal to the Merit Systems Protection Board (MSPB). 5 U.S.C. § 7513(d). However, an employee such as Sturdavant, who is suspended for fourteen days or less, has no rights under these provisions. 5 U.S.C. § 7512. Thus, the first procedure mentioned above for resolving disputes is not available to preference eligibles in all circumstances.

■ The Postal Service is directed by 39 U.S.C. § 1001(b) to "establish procedures, in accordance with [Title 39], . . . to assure its officers and employees full protection of their employment rights by guaranteeing them an opportunity for a fair hearing on adverse actions, with representatives of their own choosing." Also, 39 U.S.C. § 1206(b) provides:

Collective-bargaining agreements between the Postal Service and bargaining representatives recognized under section 1203 may include any procedures for resolution by the parties of grievances and adverse actions arising under the agreement, including procedures culminating in binding third-party arbitration, or the parties may adopt any such procedures by mutual agreement in the event of a dispute.

Grievance-arbitration procedures for employees covered by collective bargaining agreements, therefore, is the method by which the Postal Service has chosen to fulfill the "fair hearing" requirement. The legislative history of that requirement, exhaustively described in *Winston v. United States Postal Service*, 585 F.2d 198, 202–07 (7th Cir. 1978), convinces the Court that Congress fully intended that the Postal Service choose this method. The grievance-ar-

---

4. Pub.L. 91–375, 84 Stat. 719 (codified in scattered titles and sections (1979)).

bitration procedure of the National Agreement, Article XV, satisfies the "fair hearing" requirement. Accordingly, a preference eligible postal employee who is suspended for fourteen days or less may seek review of his suspension only through the grievance-arbitration procedure.

In *Winston v. United States Postal Service*, 585 F.2d 198 (7th Cir. 1978), former non-preference eligible postal employees alleged that the grievance-arbitration procedure violated procedural due process. However, the court disagreed. Plaintiffs and their international union are subject to the same collective bargaining agreement and consequently the same grievance-arbitration procedure as the parties in *Winston*. This Court adopts the reasoning of the court in *Winston* and holds that, as a matter of law, the National Agreement grievance-arbitration procedure affords sufficient procedural protection to preference eligibles suspended for fourteen days or less. *See Tufts v. United States Postal Service*, 431 F.Supp. 484, 488–89 (N.D.Ohio 1976). Plaintiffs have failed to state a claim for relief based on the Fifth Amendment.

*Statutory Provisions*

In *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court, set out four factors which are relevant to the determination whether a private remedy is implicit in a statute not expressly providing one:

First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," *Texas & Pacific R. Co. v. Rigsby*, 241 U.S. 33, 39 [36 S.Ct. 482, 484, 60 L.Ed. 874] (1916) (emphasis supplied)—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? See, e. g., *National Railroad Passenger Corp. v. National Assn. of Railroad Passengers*, 414 U.S. 453, 458, 460 [94 S.Ct. 690, 693, 694], 38 L.Ed.2d 646 (1974) (Amtrak). Third, is it consistent with the underlying purposes of the legislative scheme to imply such a

remedy for the plaintiff? See, e. g., *Amtrak*, supra; *Securities Investor Protection Corp. v. Barbour*, 421 U.S. 412, 423 [95 S.Ct. 1733, 1740], 44 L.Ed.2d 263 (1975); *Calhoon v. Harvey*, 379 U.S. 134 [85 S.Ct. 292], 13 L.Ed.2d 190 (1964). And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? See *Wheeldin v. Wheeler*, 373 U.S. 647, 652 [83 S.Ct. 1441, 1445], 10 L.Ed.2d 605 (1963); cf. *J.I. Case Co. v. Borak*, 377 U.S. 426, 434 [84 S.Ct. 1555, 1560], 12 L.Ed.2d 423 (1964); *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 394–395 [91 S.Ct. 1999, 2003–04], 29 L.Ed.2d 619 (1971); id., at 400 [91 S.Ct. 1999 at 2006], 29 L.Ed.2d 619 (Harlan, J., concurring in judgment).

422 U.S. at 78, 95 S.Ct. at 2088, 45 L.Ed.2d at 36–37; *accord Cannon v. University of Chicago*, 441 U.S. 677, 688, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560, 570 n. 9 (1979).

Each of these four factors is not entitled to equal weight. In evaluating them, the court should not forget that its ultimate mission is to decide whether Congress intended to create a private remedy. The scope of the inquiry is solely one of statutory construction. Therefore, any analysis must begin with the plain language of the statutes involved. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979); *Transamerica Mortgage Advisors v. Lewis*, 444 U.S. 11, 16, 23, 100 S.Ct. 242, 245, 249, 62 L.Ed.2d 146, 152, 157 (1979).

Examination of the plain language of the statutes on which plaintiffs rely—5 U.S.C. § 3312 and 39 U.S.C. § 1003(b)—immediately reveals that the statutes do not create the alleged federal right which plaintiffs seek to enforce. Both statutes benefit groups of which Conrad and Sturdavant are members. Yet, neither in any manner suggest that the Postal Service must grant extraordinary medical leave to disabled veterans. Section 1003(b) sets forth a general policy which the Postal Service should fol-

low. It also provides that the Postal Service should not compromise the policy of 39 U.S.C. § 101(a). The emphasis of that section is on efficiency. Thus, the Postal Service, in attempting to implement section 1003(b), must balance two competing policy considerations. The existence of the discretionary exercise which that balancing process necessitates negates the implication of any absolute right such as the one plaintiffs wish to establish. In fact, excessive absence by a postal employee would appear to directly endanger the efficiency of the Postal Service.

Section 3312, unlike section 1003(b), creates some specific rights for preference eligibles. It, however, applies expressly only to determinations of a preference eligible's qualifications for civil service examination, appointment or reinstatement. It does not expressly establish any rights applicable to a preference eligible who has already been appointed to a position. Logically extended, the statute arguably prohibits the situation where the Postal Service waives physical requirements to appoint an applicant to a job and then reverses itself by thereafter firing the employee because of the physical requirements it had waived. That is not what plaintiffs allege has occurred here. Moreover, section 3312 also places an emphasis on efficiency which would conflict with the leave policy plaintiffs desire.

■ Nothing, including the legislative history of these statutes, explicitly or implicitly indicates that Congress intended that they create a private remedy of any type. The underlying purposes of the statutory schemes of which they are a part do not suggest otherwise. Section 1003(b) establishes a general duty on the part of the Postal Service to extend opportunities to the disadvantaged and the handicapped. Its purpose, however, is not to give the Postal Service specific direction in how to fulfill that duty. The presence of language which creates that general obligation, as opposed to language which might create rights in a particular class, is the best indicator that Congress did not mean for the statute to establish a private cause of ac-

tion. *Cannon v. University of Chicago*, 441 U.S. at 690 n. 13, 99 S.Ct. at 1954, 60 L.Ed.2d at 571. Section 3312 has as its purpose the waiver of unnecessary physical requirements which might prevent preference eligibles from obtaining positions as civil servants. However, the 1978 amendment to that section established a procedure through which the Office of Personnel Management could review agency determinations as to physical disability. That amendment indicates that Congress did not intend for preference eligibles to have a cause of action anytime the initial agency determination was adverse to him.

The rights which plaintiffs seek to establish do not involve matters traditionally relegated to state law. However, since an analysis of the statutes involved under the first three *Cort* factors overwhelmingly suggests no implied cause of action, this fourth factor carries little, if any, weight. Plaintiffs have not stated a claim for which relief may be granted under either 39 U.S.C. § 1003(b) or 5 U.S.C. § 3312.

*Executive Order and Postal Regulations*

Plaintiffs contend that to deny disabled veterans medical leave violates Executive Order 5396 (July 17, 1930) and the Postal Service Employee and Labor Relations Manual (E.&L.R.M.) § 513.32(e). However, the executive order cited no longer applies to the Postal Service. And to rely on the postal manual, an employee would first have to exhaust available administrative or contractual remedies.

■ Executive Order 5396 provides:

With respect to medical treatment of disabled veterans who are employed in the Executive Civil Service of the United States, it is hereby ordered that, upon the presentation of an official statement from duly constituted medical authorities that medical treatment is required, such annual or sick leave as may be permitted by law and such leave without pay as may be necessary shall be granted by the proper supervisory officer to a disabled veteran in order that the veteran may receive such treatment, all without penalty in his efficiency rating.

The granting of such leave is contingent upon the veteran's giving prior notice of definite days and hours of absence required for medical treatment in order that arrangements may be made for carrying on the work during his absence. The President has been granted authority to prescribe such rules governing the competitive service. 5 U.S.C. § 3302. However, as indicated previously, postal employees are no longer within the competitive service, but, rather, are members of the postal career service. 39 U.S.C. § 1001(b). Consequently, Congress has granted the Postal Service authority to adopt its own rules and regulations to accomplish its objectives. 39 U.S.C. § 401(2). Except as otherwise provided in Title 39 or so far as such laws remain in force as Postal Service rules and regulations, no federal employee laws apply to the exercise of Postal Service powers. 39 U.S.C. § 410(a); *see Hampton v. Mow Sun Wong*, 426 U.S. 88, 96, 96 S.Ct. 1895, 1902, 48 L.Ed.2d 495, 505 n. 11 (1976). Thus, the President's previous orders do not automatically apply to the Postal Service. Furthermore, to allow the President to establish postal employment policies would be inconsistent with the intent, evidenced by 39 U.S.C. §§ 1201–09, that the Postal Service and the exclusive representatives of its employees enter into collective bargaining concerning conditions of employment.

The Postal Service, nevertheless, has directed that certain rules or regulations of

other agencies should continue to apply to it during its transition from the old Post Office Department. 39 C.F.R. § 211.4 (1979). The Civil Service Commission [5] had previously promulgated regulations which incorporated Executive Order 5396. In fact, the Commission had extended the coverage of the executive order to permit leave not only when disabled veterans are required to seek treatment but also when they are required to seek "examination, or are absent from duty in connection with their disability." Federal Personnel Manual (FPM) Supplement 990–2, Book 630, Subchapter S 1–4 (November 18, 1970), Affidavit of Theodore F. Powers, Exhibit PS–8 (October 22, 1979). Thus, through that Commission regulation the policy of the executive order could remain applicable to the Postal Service.

However, 39 C.F.R. § 211.4(c) only continues the application of regulations of other agencies in existence prior to the Postal Reorganization Act if they are not inconsistent with postal regulations or a collective bargaining agreement. Moreover, under 39 C.F.R. § 211.4(d) even consistent rules and regulations affecting terms and conditions of employment no longer apply after a collective bargaining agreement has been concluded if the agreement specifically continues their effects.[6]

E.&L.R.M. § 513.32(e) sets forth a leave policy similar to that of Executive Order 5396. In establishing conditions for medical leave authorization, it states in table form:

---

**5.** The Commission has been replaced by the Office of Personnel Management. 5 U.S.C. § 1101.

**6.** 39 C.F.R. §§ 211.4(c), (d) provide in relevant part:

[(c)] Except as they may be inconsistent with the provisions of the Postal Reorganization Act, with other regulations adopted by the Postal Service, or with a collective bargaining agreement under the Postal Reorganization Act, all regulations of Federal agencies other than the Postal Service or Post Office Department and all laws other than provisions of revised Title 39, United States Code, or provisions of other laws made applicable to the Postal Service by revised Title 39, United States Code, dealing with officers and employees applicable to postal officers

and employees immediately prior to the commencement of operations of the Postal Service, continue in effect as regulations of the Postal Service.

[(d)] Those rules and regulations affecting other terms and conditions of employment encompassed by Section 8(d) of the National Labor Relations Act [29 U.S.C. § 158(d)], as amended, shall continue to apply to such employees until such collective bargaining agreement has been concluded, and, unless specifically continued by such agreement, shall apply thereafter until modified or repealed by the Postal Service pursuant to its authority under 39 United States Code 1001(e) and other pertinent provisions of the Postal Reorganization Act.

e. Medical Treatment For Disabled Veterans. (Sick leave, annual leave, or LWOP, as may be necessary, is granted.)

If employees:
(1) Present a statement from a duly authorized medical authority that treatment is required.
(2) *When possible*, give prior notice of the definite number of days and hours of absence. (Such information is needed for work scheduling purposes.)

Powers Affidavit Exhibit PS–10. Section 513.32(e), however, is inconsistent with both the executive order and the FPM provision. It applies only to medical treatment as opposed to the broader coverage of the FPM. It also requires prior notice only *"when possible"* as opposed to the executive order's stricter prior notice requirement. Therefore, under 39 C.F.R. § 411.2(c), it supplants the application of either the executive order or the FPM leave provisions.

Furthermore, the National Agreement incorporates by reference the provisions of the E.&L.R.M. Articles X & XIX. Article XIX permits handbooks and manuals to contain nothing inconsistent with the National Agreement and provides for union input and possible arbitration concerning proposed changes in their provisions. Accordingly, leave provisions as well as other working conditions for postal employees are now a matter of contract. *Cf. Winston v. United States Postal Service*, 585 F.2d at 203–07. The collective bargaining agreement has substantially continued the effects of the old Commission regulation and thus has replaced 39 C.F.R. § 411.2(d). Therefore, the right to medical leave which plaintiffs assert arises under E.&L.R.M. § 513.32(e) as incorporated into the National Agreement. Plaintiffs have actually alleged an action for breach of that agreement.

■ Congress, by subjecting the Postal Service to the collective bargaining process of the private sector, has created a hybrid situation in which the employment terms and conditions of postal employees are subject to collective bargaining. District courts were accordingly given jurisdiction of suits for violation of Postal Service collective bargaining agreements. 39 U.S.C. § 1208(b). In suits for such violations union members must first exhaust contractual grievance-arbitration procedures as is required in suits against private employers under 29 U.S.C. § 185. *National Post Office Mail Handlers, Local 305 v. United States Postal Service*, 594 F.2d 988, 991 (4th Cir. 1979).

As indicated previously, Conrad, but not Sturdavant, had a right to ultimately appeal to the MSPB. Judicial review of such appeals is expressly allowed, 5 U.S.C. § 7703(a)(1), but only after the appeal has been completed. *See, e. g., American Federation of Government Employees v. Acree*, 475 F.2d 1289 (D.C.Cir.1973); *Blackmar v. United States*, 354 F.2d 340 (Ct.Cl.1965); *Baskin v. TVA*, 382 F.Supp. 641, 647 (M.D. Tenn.1974), *aff'd*, 519 F.2d 1402 (6th Cir. 1975) (table).

Plaintiffs have not alleged that they have exhausted these administrative and contractual remedies. Records submitted by defendants indicate, in fact, that Conrad has not completed either the MSPB appeal process or the grievance-arbitration procedure and that Sturdavant has not completed the grievance-arbitration procedure. Garulski Affidavit & Exhibit PS–4; Affidavit of Mae Smith & Exhibit PS–5 (August 9, 1979); Affidavit of Donald Cowan (August 9, 1979). As the exhaustion of such remedies is a prerequisite to this Court's jurisdiction, it may not now review plaintiffs' claim based upon E.&L.R.M. § 513.32(e).

Plaintiffs have failed to state a claim for which relief may be granted under the Fifth Amendment, 39 U.S.C. § 1003(b), 5 U.S.C. § 3312 or Executive Order 5396 and have failed to exhaust available administrative and contractual remedies for violations of E.&L.R.M. § 513.32(e) or the National Agreement. Thus, the Court will dismiss this action without prejudice to plaintiffs filing another action after exhaustion of those remedies if exhaustion is not time-barred.